Phyllis Kupferstein, Esq. [SBN 108595]
pk@kupfersteinmanuel.com
Cynthia L. Zedalis, Esq. [SBN 118447]
cz@kupfersteinmanuel.com
Kupferstein Manuel LLP
865 South Figueroa Street
Suite 3338
Los Angeles, California 90017
Telephone: (213) 988-7531
Facsimile: (213) 988-7532

Attorneys for Defendant
Harvey Weinstein

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY JUDD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HARVEY WEINSTEIN, an individual,<br><br>Defendant. | Case No.:  2:18-cv-05724 PSG (FFMx)<br>Honorable Philip S. Gutierrez<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Date:**   September 10, 2018<br>**Time:**    1:30 p.m.<br>**Courtroom:**   6A |

# TABLE OF CONTENTS

Preliminary Statement ........................................................................................ 1

Statement of Facts............................................................................................... 2

Argument ............................................................................................................. 4

    I.      STANDARD OF REVIEW ...................................................... 4

    II.    THE FACTS ALLEGED IN THE COMPLAINT DEMONSTRATE THAT PLAINTIFF DOES NOT AND CANNOT STATE A CLAIM FOR SEXUAL HARASSMENT........................................................ 5

          A.    Plaintiff's Unruh Act Claim is Time-Barred ............................ 5

          B.    Plaintiff Cannot Allege the Type of Business or Professional Relationship Encompassed by the Unruh Act ........................... 7

          C.    Weinstein's Alleged Misconduct Toward Plaintiff Was An Isolated Incident and Was Neither Pervasive Nor Severe.......... 9

    III.   PLAINTIFF DOES NOT AND CANNOT STATE A VIABLE DEFAMATION CLAIM .................................................... 10

          A.    Plaintiff's Defamation Claim is Untimely............................... 10

          B.    Plaintiff Does Not Establish That Weinstein Made the Purported Defamatory Remarks; Even If He Did, They Were Non-Actionable Statements of Opinion and Were Otherwise Privileged ................................................................ 13

    IV.   PLAINTIFF'S ECONOMIC HARM CLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED............... 16

          A.    Plaintiff's Claim for Interference with Prospective Economic Advantage Fails as a Matter of Law ....................... 16

          B.    Plaintiff Cannot Proceed on Her Unfair Competition Claim...................................................................................... 17

Conclusion ......................................................................................................... 19

i

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alcorn v. Anbro Eng'g, Inc.,*

4
   2 Cal. 3d 493 (1970)...................................................................................8

5

*Aguilar v. Atlantic Richfield Co.*

6
   25 Cal. 4th 826 (2001) ...........................................................................10

7

*Ashcroft v. Iqbal*,

8
   556 U.S. 662, 129 S. Ct. 1937 (2009)....................................................4

9

*Augusta v. United Serv. Auto. Ass'n*,

10
   13 Cal. App. 4th 4 (1993).......................................................................16

11

*Avila v. Larrea*,

12
   394 S.W. 3d 646 (Ct. App. Tex. 2012) .................................................15

13

*Beemer v. University of Southern California*,
   2007 WL 3161204 (C.D. Cal. July 24, 2017) .........................................6

14

*Bell Atl. Corp. v. Twombly*,

15
   550 U.S. 544, 127 S. Ct. 1955 (2007).................................................4, 5

16

*Bernson v. Browning-Ferris Industries, Inc.*,

17
   7 Cal. 4th 926 (1994).............................................................................12

18

*Brown v. Smith*,

19
   55 Cal. App. 4th767 ...............................................................................8

20

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,

21
   20 Cal. 4th 163 (1999) ...........................................................................18

22

*Covenant Care, Inc. v. Superior Court*,

23
   32 Cal. 4th 771 (2004) ...........................................................................18

24

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005)...........................................................................12

25

*Frantz v. Blackwell*,

26
   189 Cal. App. 3d 91 (1987)....................................................................7

27

*Gayer v. Polk Gulch, Inc.*,

28
   231 Cal. App. 3d 515 (1991)...................................................................6

ii

*Gibson v. United States*,
  781 F.2d 1334 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054,
  107 S. Ct. 929 (1987) ........................................................................17

*Harrah v. Toyota Logistic Servs., Inc.*,
  2004 WL 3567979 (C.D. Cal. Feb. 9, 2004)........................................18

*Hughes v. Pair*,
  46 Cal. 4th 1035 (2009) .......................................................................9

*Johnson v. Riverside Healthcare Sys.*,
  534 F.3d 1116 (9th Cir. 2008)...............................................................8

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) .......................................................................12

*Keen v. American Home Mortgage Servicing, Inc.*,
  664 F. Supp. 2d 1086 (E.D. Cal. 2009)...............................................18

*Leramo v. Premier Anesthesia Med. Grp.*,
  WL 2680837 (E.D. Cal. July 8, 2011) ..................................................8

*Lyle v. Warner Bros. Television Prods.*,
  38 Cal. 4th 264 (2006) .......................................................................10

*Ramirez v. Wong*,
  188 Cal. App. 4th 1480 (2010).............................................................10

*Rohm v. Homer*,
  367 F. Supp. 2d 1278 (N.D. Cal. 2005) ................................................8

*Rojo v. Kliger*,
  52 Cal. 3d 65 (1990)..............................................................................8

*Rotary Club of Duarte v. Bd. of Directors*,
  178 Cal. App. 3d 1035 (1986)...............................................................7

*Shively v. Bozanich*,
  31 Cal. 4th 1230 (2003) ................................................................11, 12

*Strother v. Southern Cal. Permanente Med. Group*,
  79 F.3d 859 (9th Cir. 1996)...................................................................8

*Stutz Motor Car of America, Inc. v. Reebok Int'l Inc.*,
  909 F. Supp. 1353 (C.D. Cal. 1995) ...................................................17

iii

*Suh v. Yang,*
987 F. Supp. 783 (N.D. Cal. 1997) ...................................................... 17

*Volk v. D.A. Davison & Co.,*
816 F.2d 1406 (9th Cir. 1987).............................................................. 17

*West Shield Investigations & Security Consultants v. Superior Court,*
82 Cal. App. 4th 935 (2000)................................................................... 5

*Wolf v. Travolta,*
167 F. Supp. 3d 1077 (C.D. Cal. 2016) ............................................... 13

*Yelp Inc. v. Superior Court,*
17 Cal. App. 5th 12 (2017).................................................................... 15

*ZL Technologies, Inc. v. Does 1-7,*
13 Cal. App. 5th 603 (2017)................................................................. 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................*passim*

Cal. Bus. & Prof. Code § 17208 ............................................................ 17

Cal. Civ. Code § 46.................................................................................. 4

Cal. Civ. Code § 47(c) ............................................................................ 15

Cal. Civ. Code § 51.9 .......................................................................*passim*

Cal. Civ. Code § 51.9(a)(1) ................................................................ 5, 7

Cal. Civ. Code § 51.9(a)(2) ................................................................ 5, 9

Cal. Civ. Code § 51.9(a)(3) ................................................................ 5, 9

Cal. Civ. Code § 52.......................................................................... 1, 4, 5

Cal. Gov't Code § 12900 *et seq.*......................................................... 8

Cal. Civ. Proc. Code § 335.1 .................................................................. 6

Cal. Civ. Proc. Code § 339 ................................................................... 16

Cal. Civ. Proc. Code § 340(c)............................................................... 11

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................1, 4

**Other Authorities**

5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*
   (1990), § 1216 ...................................................................................5

http://ew.com/movies/2017/12/15/peter-jackson-harvey-weinstein-sorvino-judd-
   denial-deflection-truth/ (emphasis added). .........................................14

https://starmagazine.com/videos/ashley-judd-nightmare-work-with-video/ ..........15

https://www.broadwayworld.com/article/Jason-Patric-Calls-Out-Former-Castmate-
   Ashley-Judd-20110314, .......................................................................15

https://www.imdb.com/name/nm0000171/?ref_=nv_sr_1 .......................................2

https://www.stuff.co.nz/entertainment/99921399/sir-peter-jackson-harvey-
   weinstein-made-me-blacklist-stars.................................................. 3-4, 14

www.stuff.co.nz.....................................................................................13

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant   Harvey   Weinstein   ("Weinstein"),   through   his   attorneys Kupferstein Manuel LLP, hereby respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff's Complaint (Doc. # 1-1) pursuant to Fed. R. Civ. P. 12(b)(6).

### Preliminary Statement

Plaintiff's claims arise from an alleged encounter with Weinstein in a hotel room in late 1996/early 1997 during which Weinstein purportedly asked to give her a massage and for Plaintiff to watch him shower.  According to Plaintiff, her refusals resulted in alleged retaliatory conduct sometime in 1998 when someone at Miramax, whom Plaintiff assumes to be Weinstein, purportedly told Peter Jackson, the director of the film trilogy *The Lord of the Rings* ("*LOTR*"), that Plaintiff is a "nightmare" to work with and should be avoided at all costs.  Plaintiff alleges that, as a result of Weinstein's statements, she was not cast in *LOTR*, thereby ruining her career.

This Court should dismiss Plaintiff's Complaint without leave to amend because all of her claims are time-barred.  The allegations of the Complaint expressly refute Plaintiff's contention that her late-filed claims should be tolled. For example, Plaintiff certainly knew of the alleged sexual harassment and her injuries, if any, at the time of the hotel encounter.  She further knew she was not cast in *LOTR* by the time filming began (the first film in the trilogy was released in December 2001), but claims she did not know until late 2017 that Weinstein was purportedly behind the casting decision.  However, Plaintiff admits she made no inquiries about why she was not cast in the film because she did not want to upset Jackson.  Accordingly, her failure to file a timely complaint is due to her own lack of reasonable diligence and not any affirmative misconduct on Weinstein's part.

Furthermore, Plaintiff's claims, even if not time-barred, fail on the merits. Plaintiff's sexual harassment claim under Cal. Civ. Code §§ 51.9 and 52 fails to plead that she and Weinstein had the kind of professional relationship grounded in

**1**

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

trust covered by the Act, or that the purported harassment she experienced from Weinstein was severe or pervasive—especially since Plaintiff alleged it was a one-time event and she and Weinstein struck, in Plaintiff's words, "a bargain" with respect to future sexual activity.  With regard to her defamation claim, Plaintiff has not alleged that the purported defamatory comments giving rise to her economic harm claims were even made by him.  Even if they were, the statements were non-actionable opinions and, if anything, privileged remarks.

Plaintiff's claims for intentional interference with prospective economic advantage and unfair competition are similarly baseless.  The actions Plaintiff claims form the basis of alleged unfair business practices occurred 20 years ago; there are no facts supporting Plaintiff's conclusion that Weinstein engaged in harassing and defamatory conduct to gain an economic advantage in the event Plaintiff was not cast in *LOTR*; and Plaintiff's contention that she would have been a bigger star had she been cast in the films is wholly speculative.  Thus, Plaintiff's entire Complaint fails as a matter of law and should be dismissed.

### **Statement of Facts**[1]

Plaintiff alleges that she first met Weinstein in late 1996/early 1997 when she was a "relative newcomer to Hollywood" (Complaint, ¶ 24), even though Plaintiff had roles in television series and motion pictures since 1991, and had just finished filming *Kiss the Girls,* in which she co-starred with Morgan Freeman, for Paramount Pictures.[2]  She claims Weinstein invited her to a breakfast meeting at his hotel in Los Angeles to discuss a potential film role.  *Id.*  Once she arrived at the hotel, Plaintiff was "directed to" Weinstein's hotel room where she claims she had "little choice" but to engage with him—a "powerful and influential film producer and distributor"—because she was "trying to build a reputation and

---

[1] The facts are drawn from the Complaint and, solely for purposes of this motion, are assumed to be true.

[2] https://www.imdb.com/name/nm0000171/?ref_=nv_sr_1.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

establish herself in Hollywood." *Id.*

In the hotel room, Weinstein allegedly appeared in a bathrobe and asked Plaintiff whether he could give her a massage. *Id.*, ¶ 25. After Plaintiff refused, Weinstein allegedly asked Plaintiff to select clothes for him and watch him shower. Plaintiff refused again, but then struck a "mock" bargain with Weinstein. Plaintiff alleges that she "suggest[ed] that she would consider letting him touch her only if she won an Academy Award in one of his films." *Id.* According to Plaintiff, Weinstein negotiated, "'when you get nominated,'" to which Plaintiff replied, "'No, when I win.'" *Id.* Plaintiff then "fled" from the room and met up with her father who was waiting for her in the lobby. *Id.* Plaintiff claims that she told her father about what had transpired in the hotel room with Weinstein, and repeated the story to her mother not long afterwards. *Id.* Plaintiff claims that Weinstein told her later at several public Hollywood events that he remembered their agreement. *Id.*, ¶ 27.

A year or so later, Plaintiff alleges she was in "serious discussions to play a major role" in the *LOTR* trilogy. Plaintiff met with Jackson, the director, and his partner, Fran Walsh, to discuss the film. Complaint, ¶ 28. Plaintiff alleges that Jackson and Walsh asked her "which of two potential roles she most identified with and which she would prefer," and, "on information and belief, "they liked [Plaintiff] very much and intended to cast her in their films." *Id.* According to Plaintiff, at some time in 1998, however, "Miramax (*i.e.,* Weinstein)" told Jackson and Walsh that Plaintiff was a "nightmare" to work with, they should "avoid" Plaintiff at all costs, and that "Miramax had 'bad experiences' with" Plaintiff and another actor in the past. *Id.*, ¶ 30. Plaintiff contends that, because of these statements—which Plaintiff infers were made by Weinstein, not "Miramax," as relayed by Jackson[3]— she was not cast in *LOTR*, which ruined her film career and

---

[3] The interview referenced in the Complaint is found at https://www.stuff.co.nz/entertainment/99921399/sir-peter-jackson-harvey-

financially benefitted Weinstein because she lacked increased bargaining power later on when she acted in two films produced by The Weinstein Company. *Id.*, ¶ 45.

Based on these allegations, the Complaint attempts to state four causes of action against Weinstein: (1) defamation at common law and in violation of Cal. Civ. Code § 46 (Complaint, ¶¶ 48-60); (2) sexual harassment in professional relationships in violation of Cal. Civ. Code §§ 51.9 and 52 (*id.*, ¶¶ 61-72); (3) international interference with prospective economic advantage (*id.*, ¶¶ 73-82)[4]; and (4) violation of Cal. Bus. & Prof. Code § 17200. *Id.*, ¶¶ 83-92. All of them fail.

## Argument

### I.    STANDARD OF REVIEW

The law applicable to this motion is clear.  Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  In determining the adequacy of a complaint, a court must disregard the complaint's conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679.  Claims that do not cross the "line from conceivable to plausible" must be dismissed. *Id.* at 680 (quoting *Twombly,* 550 U.S. at 570.  When the complaint cannot raise a claim of entitlement to relief, "'this basic deficiency

---

weinstein-made-me-blacklist-stars.  In the article, Jackson is reported as saying, "'I recall *Miramax* telling us they were a nightmare to work with and we should avoid them at all costs.  This was probably in 1998,' Jackson said." *Id.* (emphasis added).  The article's writer attributed Jackson's quote to Weinstein.

[4] Plaintiff does not allege that anyone associated with *LOTR,* including Jackson and Walsh, would have cast her as Galadriel or Arwen in lieu of Cate Blanchett or Liv Tyler, respectfully.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

should . . . be exposed to the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* (1990) § 1216, at 233-234 (internal citations omitted)).

As discussed below, all four of Plaintiff's causes of action are clearly deficient and should be dismissed.  Accordingly, Weinstein's Motion to Dismiss should be granted without leave to amend.

## II.  THE FACTS ALLEGED IN THE COMPLAINT DEMONSTRATE THAT PLAINTIFF DOES NOT AND CANNOT STATE A CLAIM FOR SEXUAL HARASSMENT

Plaintiff's claim for sexual harassment in violation of Cal. Civ. Code §§ 51.9 and 52 fails for several reasons.  First, the claim is barred by the statute of limitations, as it was brought more than 20 years after the alleged incident, and no basis for tolling the statute is or could be alleged.  Second, Plaintiff does not and cannot allege a "business, service, or professional relationship between the plaintiff and the defendant" that satisfies § 51.9(a)(1), let alone that there was "an inability by the plaintiff to easily terminate the relationship," as required by § 51.9(a)(3).  Finally, the single encounter Plaintiff alleges during which Weinstein allegedly made sexual advances does not constitute "pervasive or severe" sexual harassment, as required by § 51.9(a)(2).

### A.  Plaintiff's Unruh Act Claim Is Time-Barred

The Complaint alleges that the incident involving the parties occurred in a hotel room in either late 1996 or early 1997.  Plaintiff's sexual harassment claim pursuant to Cal. Civ. Code §§ 51.9 and 52 is therefore time-barred.  *See West Shield Investigations & Security Consultants v. Superior Court*, 82 Cal. App. 4th 935 (2000) (holding that one-year statute of limitations for personal injuries

5

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1    applied to Unruh Act claims).[5]

2        Plaintiff cannot evade the statute of limitations by alleging that she was

3    unaware of her cause of action.   Plaintiff certainly knew when the alleged

4    harassment occurred and whether she was injured by the alleged "traumatic

5    moment."  Complaint, ¶ 27.  In fact, she told her parents about "what Weinstein

6    had done only minutes earlier" and, when she came downstairs to the hotel lobby,

7    her father remarked that she looked like "something 'devastating' had happened to

8    her."  *Id.*, ¶ 26.  Therefore, Plaintiff has no excuse for filing her claim outside of

9    the limitations period.  She does not and cannot allege that Weinstein concealed his

10   alleged advances towards her, or that he fraudulently led her to believe that she had

11   no claim against him.  Weinstein's position as a powerful film producer does not

12   justify Plaintiff's late-filed action and would, instead, result in indefinite tolling of

13   the statute of limitations.[6]  Accordingly, there is no basis for tolling the statute of

14   limitations here on the sexual harassment claim.

15        Plaintiff attempts to avoid the statute of limitations defense by claiming that

16   she did not know she had been retaliated against until the December 2017 release

17   of the Peter Jackson interview.  *See* Complaint, ¶ 70.  However, the Unruh "Act

18   does not encompass discrimination based on retaliation...."  *Gayer v. Polk Gulch,*

19

20   [5] Since the *West Shield* decision, personal injury actions are subject to a two-year
     statute of limitations under Cal. Civ. Proc. Code § 335.1 (effective January 2003).
21   *See Beemer v. University of Southern California,* 2007 WL 3161204, *12 (C.D.
     Cal. July 24, 2017) ("Plaintiff's claim for sexual harassment in violation of the
22   Unruh Act is subject to the two-year personal injury statute of limitations in
     California.")  However, as the alleged incident occurred more than 15 years prior
23   to the change in California's statute of limitations for personal injuries, the one-
     year limitation period is applicable here.
24
25   [6] Plaintiff should not be permitted to rely on her assertion that she was an ingénue
     in the film business when she went to Weinstein's hotel room.  As stated above,
26   Plaintiff had roles in television programs and films for several years prior to
     meeting with Weinstein.  Additionally, Plaintiff grew up in a famous household
27   (her mother and sister are country music stars Naomi Judd and Wynonna Judd)
     well-versed in the entertainment industry.

28

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

*Inc.*, 231 Cal. App. 3d 515, 519 (1991).  Nor does the Unruh Act seek to remedy discrimination based on purely personal grounds, such as Plaintiff's conduct in rejecting Weinstein's alleged advances.  *See Frantz v. Blackwell,* 189 Cal. App. 3d 91 (1987).  Plaintiff would have known of her injury when she was not cast in *LOTR.*  As discussed below in the context of Plaintiff's defamation claim, that Weinstein was the alleged cause of her loss of the role could, in the exercise of reasonable diligence, have been discovered by Plaintiff 20 years ago.  She could have simply asked Jackson, Walsh, or the casting director of *LOTR* the reason why she did not get the part.  Plaintiff did not do so, and instead chose to forego filing her claim in order to curry favor with industry producers and directors. Complaint, ¶ 35. Thus, Plaintiff's second cause of action is time-barred.

## B.    Plaintiff Cannot Allege the Type of Business or Professional Relationship Encompassed by the Unruh Act

In order to bring a case under the Unruh Act, the plaintiff must allege that there "is a business, service, or professional relationship between the plaintiff and defendant."  Cal. Civ. Code § 51.9(a)(1).  The statute goes on to enumerate several relationships of trust, such as medical professionals, attorneys, social workers, lending officers, trustees, landlords, teachers, and "[a] relationship that is substantially similar to any of the above."  In deciding Unruh Act cases, whether a particular defendant is a "business establishment" is a question of law.  *See Rotary Club of Duarte v. Bd. of Directors,* 178 Cal. App. 3d 1035, 1050 (1986).  Here, however, Plaintiff fails to allege any existing business or professional relationship with Weinstein.  She alleges that their encounter in the Peninsula Hotel was for the purpose of discussing *potential* film roles.  Thus, her Complaint is more properly read as alleging a potential employment relationship between herself and Miramax, Weinstein's former company. But a potential employment relationship is not encompassed within the Act.

The "California Supreme Court has expressly held that employment

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

discrimination claims are excluded from §51's protection." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1124 (9th Cir. 2008) (en banc) (citing *Alcorn v. Anbro Eng'g, Inc.,* 2 Cal. 3d 493, 500 (1970); *Leramo v. Premier Anesthesia Med. Grp.,* WL 2680837, at *18 (E.D. Cal. July 8, 2011). In *Alcorn*, an employment discrimination case, the California Supreme Court held that, despite the Unruh Act's extensive reach, "there is no indication that the Legislature intended to broaden the scope of section 51 to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers."  *See also Rojo v. Kliger*, 52 Cal. 3d 65 (1990) (because sexual harassment is a form of sexual discrimination, the Unruh Act does not supplant the Fair Employment and Housing Act's exclusive remedies for workplace discrimination)[7]; *Brown v. Smith*, 55 Cal. App. 4th 767 (reiterating rule that Unruh Act does not extend to the employer/employee context); *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1286-87 (N.D. Cal. 2005) (stating that the Act focuses on rectifying "discrimination against recipients of [a] business establishment's . . . goods, services, or facilities'" and therefore excludes "the employer-employee relationship"); *Strother v. Southern Cal. Permanente Med. Group,* 79 F.3d 859, 873-74 (9th Cir. 1996) (doctor's discrimination claim against medical group failed because the relationship was more like that of an employee than that of a client, patron or customer).

Plaintiff clearly alleges that she met with Weinstein in his hotel room "to discuss potential roles in films."  Complaint, ¶ 24.  Thus, the intention of their meeting was to establish an employer/employee relationship.  There is no allegation that Weinstein was providing Plaintiff with business or professional services such as a physician, dentist, attorney, building contractor, teacher or others might whom the statute holds accountable for sexual harassment.  Plaintiff and

[7] California's Fair Employment and Housing Act is codified at Cal. Gov't Code § 12900, *et seq.* ("FEHA").

1   Weinstein were not doing business; rather, the intent of the meeting was for
2   Plaintiff to become employed.

3           Furthermore, Plaintiff cannot plausibly allege that, even if she had a
4   "business" or "professional" relationship with Weinstein *at the time of the incident*,
5   the relationship was one that she could not "easily" terminate. Cal. Civ. Code §
6   51.9(a)(3).  At the time of their meeting in the hotel, Plaintiff had already enjoyed
7   a successful career, and none of her credits were in Miramax productions.  Her
8   next several films were not Miramax productions, either.  Thus Plaintiff cannot
9   plausibly plead the essential elements of a claim under Cal. Civ. Code § 51.9.

10          **C.      Weinstein's Alleged Misconduct Toward Plaintiff Was an**
11                    **Isolated Incident and Was Not Pervasive or Severe**

12          Plaintiff's allegations also fail to satisfy the element of "unwelcome and
13   pervasive or severe" harassment.  Cal. Civ. Code § 51.9(a)(2) ("The defendant has
14   made sexual advances, solicitations, sexual requests, demands for sexual
15   compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct
16   of a sexual nature or of a hostile nature based on gender, that were unwelcome and
17   pervasive or severe.").  Weinstein's alleged unwanted sexual advances occurred on
18   a single day and consisted of him asking to give Plaintiff a massage, asking her to
19   help him pick out clothes, and asking her to watch him shower.  Complaint, ¶ 25.
20   These allegations fall far short of meeting the "pervasive or severe" required
21   element.

22          In *Hughes v. Pair*, 46 Cal. 4th 1035, 1048 (2009), the California Supreme
23   Court held that FEHA "severe and pervasive" standards apply to a section 51.9
24   claim, and that the relevant inquiry is whether the alleged conduct was pervasive
25   and severe enough so as to alter the conditions of the business relationship.  In
26   *Hughes,* the defendant trustee of the plaintiff's son's trust made several suggestive
27   comments to the plaintiff, including "'I'll get you on your knees eventually.  I'm
28   going to fuck you one way or another."  The Court found that the defendant's

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

conduct was *not* sufficiently pervasive, because it took place in one day, and explained why it also found the conduct was not severe:

> Nor was defendant's alleged conduct "severe" within the meaning of Cal. Civ. Code section 51.9. As noted earlier (p. 8, *ante*), employment law acknowledges that an isolated incident of harassing conduct may qualify as "severe" when it consists of "a *physical* assault or the threat thereof." [internal citations omitted] Here, plaintiff contends that defendant threatened her with physical violence when he told her at the museum: "I'll get you on your knees eventually. I'm going to fuck you one way or another." We disagree with plaintiff's characterization. Although vulgar and highly offensive, this remark, which was made in the presence of other people attending a private showing at a museum, would not plausibly be construed by a reasonable trier of fact as a threat to commit a sexual assault on plaintiff. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal. 4th 826, 856.) Most reasonably construed, defendant's comment was a threat, not of physical violence, but of financial retaliation: that he would use his power as a trustee to thwart plaintiff's requests to allocate funds from the trust established for her son Alex. But such a threat will not support a claim under section 51.9 for the hostile environment form of sexual harassment, because it does not constitute "severe" harassing conduct. [internal citations omitted]

46 Cal. 4th at 1049. *See also Ramirez v. Wong,* 188 Cal. App. 4th 1480 (2010) (resident manager's alleged acts of entering tenants' residence without their permission or knowledge and sniffing their underwear were not pervasive or severe enough to permit liability under section 51.9); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006) (there is no recovery "for harassment that is occasional, isolated, sporadic, or trivial").

Therefore, Plaintiff's second cause of action for sexual harassment under the Unruh Act fails as a matter of law.

## III.   PLAINTIFF DOES NOT AND CANNOT STATE A VIABLE DEFAMATION CLAIM

### A.   Plaintiff's Defamation Claim Is Untimely

Plaintiff alleges that, in retaliation for rejecting Weinstein's purported

advances, "Miramax (i.e., Weinstein)" defamed her in 1998 by telling the *LOTR* producers that she was a "nightmare" to work with.  Claims for defamation must be filed within one year of the alleged defamatory comment.  Cal. Civ. Proc. Code § 340(c).  Thus, even assuming Weinstein made the statement to Jackson and Walsh, and such statement was defamatory and not privileged, Plaintiff filed this action 20 years too late.

Further, there are no allegations in the Complaint that would support an argument that Plaintiff's defamation claim was somehow tolled because she did not discover the alleged defamation until December 2017, when the Jackson interview was published.  Plaintiff fails to allege that she exercised due diligence in determining why she was not cast in *LOTR,* other than stating that she did not "discover" the statements "Weinstein made" until December 2017.  *See Shively v. Bozanich,* 31 Cal. 4th 1230, 1248 (2003) ("We have recognized that in some instances, the accrual of a cause of action in tort is delayed until the plaintiff discovers (or reasonably should have discovered or suspected) the factual basis of his or her claim.").  The *Shively* Court explained:

> As observed by the Courts of Appeal here and in several other decisions, the discovery rule most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand.

*Id.* (citations omitted).  The California Supreme Court in *Shively* recognized that "in certain circumstances it may be appropriate to apply the discovery rule to delay the accrual of a cause of action for defamation or to impose an equitable estoppel against defendants who assert the defense after the limitations period has expired." *Id.* at 1248-1249.

The discovery rule should not be applied here.  While Plaintiff may not have been aware of the alleged 1998 conversation between "Miramax," Jackson, and Walsh, she knew she was not cast in the film even though, according to Plaintiff, Jackson and Walsh "liked [Plaintiff] very much and intended to cast her in their

films" (Complaint, ¶ 28) and "expressed their enthusiasm for casting" Plaintiff. *Id.,* ¶ 30. "Although the normal rule is that ignorance of the identity of the defendant is not a basis for tolling the statute of limitations," the *Shively* Court explained that equitable estoppel has been applied only in cases where the defendant denied having made the defamatory statement and therefore precluded "the plaintiff from ever ascertaining the identity of the defendant." *Shively,* 31 Cal. 4th at 1249 (citing *Bernson v. Browning-Ferris Indus., Inc.,* 7 Cal. 4th 926, 932-933, 936 (1994). As a professional actor, Plaintiff and/or her agent certainly had the wherewithal to ask about the reasons for the casting decision. Unlike "professional malpractice actions" where "delayed accrual is justified on the basis that the expertise expected of professionals is beyond the ability of laypersons to evaluate," here there was nothing "particularly difficult" that would have prevented even the most "ordinary person" to discover or suspect that something had gone awry, especially as Plaintiff contends she was a shoo-in for the part. *Shively,* 31 Cal. 4th at 1248.

Indeed, as the California Supreme Court has held, "a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (courts "look to whether the plaintiffs have reason *to at least suspect* that a type of wrongdoing has injured them.") (emphasis added). Therefore, "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111, (1988).

In this case, Plaintiff alleges that both her hotel room encounter with Weinstein and the casting decision—"the first events underlying [Plaintiff]'s complaint"—occurred in "approximately 1996 through 1998." Complaint, ¶ 5.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Thus, there were, at a minimum, two events that occurred in close proximately to each other that should have raised Plaintiff's suspicion that they were somehow connected.  Under California law, "[s]o long as a *suspicion* exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Wolf v. Travolta,* 167 F. Supp. 3d 1077, 1102 (C.D. Cal. 2016) (citing *Jolly*, 44 Cal. 3d at 1110) (emphasis in original).

Moreover, Plaintiff alleges she decided *not* to inquire about the casting decision *because she did not want to make waves with Mr. Jackson and Ms. Walsh*. She alleges:

> Given her prior experience in the film industry, Ms. Judd reasonably believed that asking Mr. Jackson and Ms. Walsh why she was removed from consideration *would have risked alienating them and negatively affected their willingness to consider her for future projects.*

Complaint, ¶ 35 (emphasis added).  Thus, Plaintiff made the conscious decision not to investigate her claim in order to advance her career.  For this reason alone, the Court should dismiss Plaintiff's stale claim with prejudice.

**B.    Plaintiff Does Not Establish That Weinstein Made the Purported Defamatory Remarks; Even If He Did, They Were Non-Actionable Statements of Opinion and Were Otherwise Privileged**

The purported 1998 statement to Jackson and Walsh that Plaintiff was a "nightmare" to work with and should be "avoided" at all costs was, according to Plaintiff, the "headwind" that held her "back from obtaining the work she wanted." Complaint, p. 2.  Plaintiff claims she first learned of the purported defamatory statements from a December 2017 article summarizing an interview with Jackson. In footnote 21 of her Complaint, Plaintiff cites to that interview, which published on the New Zealand website www.stuff.co.nz.  The quote attributed to Jackson neither supports the headline ("Sir Peter Jackson: Harvey Weinstein made me blacklist stars") nor Plaintiff's claims, however.

In the article, Jackson is reported as saying, "'I recall *Miramax* telling us they were a nightmare to work with and we should avoid them at all costs.  This was probably in 1998,'" Jackson said."[8]  Jackson doubled-down on his previous assertion after the stuff.co.nz article was published.  He told *Entertainment Weekly* in an article published on December 15, 2017:

> After this meeting, we *were told by Miramax* to steer clear of both Ashley and Mira, because they claimed to have had "bad experiences" with these particular actresses in the past.
> …
> Fran and I immediately *remembered Miramax's negative reaction* when we put their names forward, and we wondered if we had unwittingly been part of the alleged damage to their careers, *at the hands of Miramax*.
>
> We have no direct evidence linking Ashley and Mira's allegations to our Lord of the Rings casting conversations of 20 years ago – but we stand by what we were *told by Miramax* when we raised both of their names, and we are recounting it accurately.[9]

(Emphasis added.)  Thus, based on the sources Plaintiff relies on in the Complaint, an unnamed person or persons *at Miramax*, *not* Weinstein, said Plaintiff was a nightmare to work with.  This fact defeats Plaintiff's defamation claim in its entirety.

In addition, even if made by Weinstein, the purported statements are not defamatory because they cannot be factually proven or disproven.  As the Court recently held in *ZL Technologies, Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624, (2017), because the *sine qua non* of recovery for defamation is the existence of falsehood, the statement must contain a "provable falsehood."  Courts distinguish between statements of fact and statements of opinion for purposes of defamation

---

[8] https://www.stuff.co.nz/entertainment/99921399/sir-peter-jackson-harvey-weinstein-made-me-blacklist-stars (emphasis added).
[9]  http://ew.com/movies/2017/12/15/peter-jackson-harvey-weinstein-sorvino-judd-denial-deflection-truth/ (emphasis added).

liability, because although "statements of fact may be actionable as libel, statements of opinion are constitutionally protected." *Id.*

In this case, the alleged defamatory remarks are not statements of fact. Whether an actor is a "nightmare" to work with is an opinion not capable of being proven. *See, e.g., Yelp Inc. v. Superior Court,* 17 Cal. App. 5th 12, 16 (2017) deemed a "pure opinion"); *Avila v. Larrea,* 394 S.W. 3d 646, 659 (Ct. App. Tex. 2012) (television reporter's statement that case of a criminal client represented by an attorney "ended in a nightmare" was not defamatory because "nightmare" was used as a figurative term or opinion). Plaintiff may dispute she was difficult to work with but, like beauty, the experience is in the eye of the beholder.[10] Unlike statements that a particular actor could not remember his or her lines, would be late to set, or required many takes—all of which are susceptible to proof—describing Plaintiff as a "nightmare" and cautioning others to "avoid" her does not support a defamation claim.

Moreover, assuming that the statements were defamatory (which they are not), they are not actionable because they were privileged under the common interest doctrine set forth in Cal. Civ. Code § 47(c).[11] If, as alleged, Weinstein had a financial stake in *LOTR*, he would have a legitimate business reason to comment on casting and avoid actors that he thought would be a "nightmare" to work with.

Finally, while Plaintiff alleges conclusorily that the statements were made with actual malice and thus neither privileged nor justified (Complaint, ¶¶ 54 &

---

[10] Third parties have described Plaintiff as difficult to work with (*see, e.g., https://starmagazine.com/videos/ashley-judd-nightmare-work-with-video/,* in which a set worker stated in 2017 that, "[her] attitude is threatening to derail the whole show, and if there's a third season you can bet she won't be back"; and https://www.broadwayworld.com/article/Jason-Patric-Calls-Out-Former-Castmate-Ashley-Judd-20110314, in which actor Jason Patric claimed that Plaintiff was "lazy, selfish and arrogant"), but research has not revealed that she has pursued defamation claims against those speakers.

[11] Plaintiff alleges that Weinstein, through Miramax, had a financial interest in *LOTR* (Compl., ¶ 13); thus, he, Jackson and Walsh had a common interest, which was to produce a film.

**15**

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

55), other allegations in the Complaint establish the opposite was true.  Plaintiff alleges she struck a "deal" with Weinstein in the hotel room.  *Id.*, ¶ 25.  She would let him touch her only if she "won an Academy Award in one of his films."  *Id.* According to Plaintiff, Weinstein then attempted to live up to his part of the bargain by trying to cast Plaintiff in as many roles as possible that could earn her an Academy Award.  Thus, Weinstein's subsequent actions in having Plaintiff cast in other films after the alleged defamation occurred (*Id.*, ¶¶ 31, 39, 45, & 52)— including his attempt to have her play opposite Matt Damon in *Good Will Hunting*, a role that was ultimately portrayed by Minnie Driver, who was nominated for an Academy Award for the part—reflects his motivation to advance her career, not ruin it, and undermines Plaintiff's defamation claim (as well as her retaliation claim) in its entirety.

## IV.   PLAINTIFF'S ECONOMIC HARM CLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED

Plaintiff cannot proceed on her remaining two claims—for intentional interference with prospective economic advantage (third cause of action) and unfair competition in violation of Cal. Bus. & Prof. Code § 17200 (fourth cause of action)—because they are time-barred and otherwise lack merit.

### A.   Plaintiff's Claim for Interference With Prospective Economic Advantage Fails as a Matter of Law

Plaintiff's third cause of action for intentional interference with prospective economic advantage is subject to a two-year statute of limitations.  *Augusta v. United Serv. Auto. Ass'n*, 13 Cal. App. 4th 4, 10 (1993) (citing Cal. Civ. Proc. Code § 339).  Plaintiff affirmatively pleads in the Complaint that Weinstein interfered with her potential employment as an actor in *LOTR* in 1998 when he purportedly told Jackson and Walsh that she was a nightmare to work with and should be avoided at all costs.  For the same reasons that Plaintiff's defamation claim is time-barred, her third cause of action also fails, and Plaintiff incorporates

1    herein the arguments set forth above in section III.

2         **B.    Plaintiff Cannot Proceed on Her Unfair Competition Claim**

3         Plaintiff's fourth cause of action for unfair competition under Cal. Bus. &

4    Prof. Code § 17200 is subject to a four-year statute of limitations and, thus, time-

5    barred.  Cal. Bus. & Prof. Code § 17208.  Her Section 17200 claim should have

6    been filed in 2002, at the latest, which was four years after she did not get the part

7    in *LOTR*.    Again, Plaintiff seeks to circumvent the statute of limitations by

8    claiming, in paragraph 88 of the Complaint, that her dilatory conduct should be

9    excused by virtue of the "discovery rule," which delays accrual of certain causes of

10   action until the plaintiff has actual or constructive knowledge of facts giving rise to

11   the claim.   However, the "discovery rule" does not apply to unfair competition

12   actions.   Instead, the "statute begins to run . . . irrespective of whether plaintiff

13   knew of its accrual, *unless plaintiff can successfully invoke the equitable tolling*

14   *doctrine*."  *Stutz Motor Car of America, Inc. v. Reebok Int'l Inc.*, 909 F. Supp.

15   1353, 1365 (C.D. Cal. 1995) (emphasis added); *see also Suh v. Yang,* 987 F. Supp.

16   783, 795 (N.D. Cal. 1997).

17        In her Complaint, Plaintiff fails to allege any facts to invoke application of

18   the equitable tolling doctrine.  She alleges no affirmative conduct by Weinstein to

19   fraudulently conceal his purported conversation with Jackson and Walsh or that

20   would lead a reasonable person to believe that she did not have a claim for relief.

21   *See Volk v. D.A. Davison & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987) (quoting

22   *Gibson v. United States*, 781 F.2d 1334, 1345 (9th Cir. 1986), *cert. denied*, 479

23   U.S. 1054, 107 S. Ct. 929 (1987).   That someone at Miramax (presumed by

24   Plaintiff to be Weinstein) and Jackson purportedly had a conversation about

25   Plaintiff is insufficient for purposes of invoking the doctrine.  As the Court stated

26   in *Stutz*,

27        In an oversight that is fatal to its argument, plaintiff has cited no
          evidence whatsoever of affirmative conduct on the part of
28        defendant.   As "[b]ald  allegations  of  conspiracy  and
          concealment are not sufficient to make out a case of fraudulent

---

17

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

1
2

> concealment" so as to toll the statute of limitations, ... plaintiff's argument is ultimately futile.

3   909 F. Supp. at 1363 (internal citations omitted).  Here, as stated above, Plaintiff

4   makes no allegations of fraudulent concealment; thus, her section 17200 claim fails

5   because the statute of limitations has not been tolled.

6        Plaintiff is also unable to proceed on her unfair competition claim because it

7   wholly lacks merit.  First, Plaintiff has not identified actionable conduct.  To

8   properly assert a cause of action under Section 17200, a plaintiff must allege facts

9   showing that some practice by defendant violated a specific underlying law.  *Cel-*

10  *Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180

11  (1999).  Here, Plaintiff's claims are grounded in sexual harassment and defamation

12  but, as shown above, these claims fail as a matter of law, and her unfair

13  competition claim does not set forth any additional allegations regarding conduct

14  on Weinstein's part that is actionable as unfair, unlawful or fraudulent.  A plaintiff

15  is required to plead statutory causes of action with particularity.  *Covenant Care,*

16  *Inc. v. Superior Court*, 32 Cal. 4th 771, 790 (2004) (citation omitted).

17       Second, the Section 17200 claim is subject to dismissal because it is

18  derivative of Plaintiff's sexual harassment and defamation claim.  Section 17200

19  does not create any substantive rights, but instead merely "borrows" existing rights

20  from other laws.  *See Harrah v. Toyota Logistic Servs., Inc.*, 2004 WL 3567979, *1

21  (C.D. Cal. Feb. 9, 2004).  Thus, where a section 17200 claim is based on facts

22  supporting other causes of action that have been deemed insufficient, the trailing

23  Section 17200 claim will be dismissed as well.  *Keen v. American Home Mortgage*

24  *Servicing, Inc.*, 664 F. Supp. 2d 1086, 1102 (E.D. Cal. 2009).  Because Plaintiff's

25  substantive causes of action fail, the derivative claim for unfair business practices

26  must also be dismissed.

27       Accordingly, Plaintiff's Complaint fails to state causes of action for

28  interference with prospective economic advance and for unfair competition in

violation of Cal. Bus. & Prof. Code § 17200 as a matter of law; consequently, her third and fourth causes of action should be dismissed.

## Conclusion

For the reasons set forth above, Defendant' Motion to Dismiss should be granted and Plaintiff's Complaint dismissed with prejudice and without leave to amend.

Dated:  July 17, 2018                          KUPFERSTEIN MANUEL LLP

*/s/ Phyllis Kupferstein*
Phyllis Kupferstein
pk@kupfersteinmanuel.com
Cynthia L. Zedalis
cz@kupfersteinmanuel.com
865 S. Figueroa St.
Suite 3338
Los Angeles, California 90017
(213) 988-7531 – Telephone
(213) 988-7532 – Telefax

Attorneys for Defendant
Harvey Weinstein

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)