1   THEODORE J. BOUTROUS JR., SBN 132099
      tboutrous@gibsondunn.com
2   THEANE EVANGELIS, SBN 243570
      tevangelis@gibsondunn.com
3   MICHAEL H. DORE, SBN 227442
      mdore@gibsondunn.com
4   LAUREN M. BLAS, SBN 296823
      lblas@gibsondunn.com
5   KELLY P. WELCH, SBN 286910
      kwelch@gibsondunn.com
6   LORI C. ARAKAKI, SBN 315119
      larakaki@gibsondunn.com
7   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
8   Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
9   Facsimile:   213.229.7520

10   Attorneys for Plaintiff Ashley Judd

11                  UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13   Ashley Judd,                        CASE NO. 18-cv-05724 PSG (FFMx)

14              Plaintiff,               **PLAINTIFF'S OPPOSITION TO
                                         DEFENDANT'S MOTION TO
15         v.                            DISMISS**

16   Harvey Weinstein,                   **Hearing**:
                                         Date:      September 10, 2018
17              Defendant.               Time:      1:30 p.m.
                                         Place:     350 West 1st Street,
18                                                  Courtroom 6A, 6th Floor
                                                    Los Angeles, CA  90012
19                                       Judge:     Hon. Philip S. Gutierrez

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 3

III. LEGAL STANDARD ............................................................................................ 5

IV. ARGUMENT ......................................................................................................... 6

    A.    Ms. Judd's Claims Are Timely ..................................................... 6

    B.    Ms. Judd Has Sufficiently Stated A Claim For Civil Harassment........... 10

        1.    Ms. Judd Has Pleaded That She Was In A Business And Professional Relationship Of Drastically Unequal Power With Weinstein As Required By Section 51.9 .............................. 12

        2.    Ms. Judd Has Pleaded The Requisite Conduct To Warrant A Finding Of Liability Under Section 51.9 ....................................... 15

    C.    Ms. Judd States A Claim For Defamation ................................................. 17

        1.    Ms. Judd Has Pleaded That Weinstein Made The Defamatory Statements ..................................................................... 17

        2.    Weinstein's Statements Imply An Actionable False Assertion Of Fact ..................................................................................... 18

        3.    Weinstein's Statements Are Not Privileged Under Civil Code Section 47(C) ..................................................................... 22

    D.    Ms. Judd Has Timely Stated A Claim For Intentional Interference With Prospective Economic Advantage ................................................. 23

    E.    Ms. Judd Has Stated A Claim For Unfair Competition ........................... 24

V. CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Alcorn v. Anbro Engineering, Inc.*,
    2 Cal. 3d 493 (1970) ................................................................................... 11

*Apr. Enterprises, Inc. v. KTTV*,
    147 Cal. App. 3d 805 (1983) ......................................................................... 7

*Arvizu v. Wal-Mart Stores, Inc.*,
    2017 WL 747432 (N.D. Cal. Feb. 27, 2017) ............................................... 22

*Aryeh v. Canon Business Solutions, Inc.*,
    55 Cal. 4th 1185 (2013) ........................................................................... 7, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................... 5

*Avila v. Larrea*,
    394 S.W.3d 646 (Ct. App. Tex. 2012) ......................................................... 21

*Baker v. Cohen*,
    2010 WL 11515458 (C.D. Cal. Feb. 18, 2010) ............................................. 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 5

*Bently Reserve LP v. Papaliolios*,
    218 Cal. App. 4th 418 (2013) ................................................................. 18, 19

*Brooks v. City of San Mateo*,
    229 F.3d 917 (9th Cir. 2000) ....................................................................... 15

*Brown v. Smith*,
    55 Cal. App. 4th 767 (1997) ........................................................................ 11

*C.R. v. Tenet Healthcare Corp.*,
    169 Cal. App. 4th 1094 (2009) ............................................................... 14, 15

*Caputo v. Prada USA Corp.*,
    2014 WL 12567143 (C.D. Cal. Feb. 6, 2014) ........................................ 22, 23

Gibson, Dunn & Crutcher LLP

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ......................................................................................24

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) ...............................................................................7

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices*,
   2008 WL 4544441 (N.D. Cal. Sept. 30, 2008) ..................................................9

*Cover v. Windsor Surry Co.*,
   2015 WL 4396215 (N.D. Cal. July 17, 2015) ...................................................25

*Denver Urban Homesteading, LLC v. Dervaes Inst.*,
   2015 WL 12819140 (C.D. Cal. July 15, 2015) ...........................................7, 23

*Farmers Ins. Exch. v. Superior Court*,
   2 Cal. 4th 377 (1992) .......................................................................................24

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ..................................................................................6, 8

*Frantz v. Blackwell*,
   189 Cal. App. 3d 91 (1987) ..............................................................................11

*Gayer v. Polk Gulch, Inc.*,
   231 Cal. App. 3d 515 (1991) ............................................................................11

*Gregory v. McDonnell Douglas Corp.*,
   17 Cal. 3d 596 (1976) ......................................................................................18

*Hawran v. Hixson*,
   209 Cal. App. 4th 256 (2012) ...........................................................................18

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) .............................................................9, 11, 13, 15, 16

*Jackson v. Mayweather*,
   10 Cal. App. 5th 1240 (2017) ...........................................................................17

*Johnson v. Riverside Healthcare System, LP*,
   534 F. 3d 1116 (9th Cir. 2008) ........................................................................11

*Kahn v. Bower*,
   232 Cal. App. 3d 1599 (1991) ..........................................................................19

*Kremer v. Zillow, Inc.*,
    2015 WL 438418 (C.D. Cal. Feb. 3, 2015) .............................................................. 16

*Leramo v. Premier Anesthesia Med. Grp.*,
    2011 WL 2680837 (E.D. Cal. July 8, 2011) ............................................................ 11

*Lukovsky v. City & Cty. of S.F.*,
    535 F.3d 1044 (9th Cir. 2008) ..................................................................................... 6

*Lyle v. Warner Bros. Television Prods.*,
    38 Cal. 4th 264 (2006) ................................................................................................ 16

*Macias v. Lange*,
    2016 WL 1274762 (S.D. Cal. Apr. 1, 2016) ............................................................ 10

*Martin v. Tradewinds Beverage Co.*,
    2017 WL 6816608 (C.D. Cal. Sept. 5, 2017) ............................................................ 5

*Matsumoto v. Republic Ins. Co.*,
    792 F.2d 869 (9th Cir. 1986) ........................................................................................ 8

*McNamee v. Roman Catholic Diocese of Sacramento*,
    2015 WL 1469210 (E.D. Cal. Mar. 30, 2015) .......................................................... 21

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ........................................................................................................... 18

*Mogilefsky v. Superior Court*,
    20 Cal. App. 4th 1409 (1993) .................................................................................... 14

*NBCUniversal Media, LLC v. Superior Court*,
    225 Cal. App. 4th 1222 (2014) .................................................................................... 8

*Nevada Pwr. Co. v. Monsanto Co.*,
    955 F.2d 1304 (9th Cir. 1992) ...................................................................................... 6

*Noel v. River Hills Wilsons, Inc.*,
    113 Cal. App. 4th 1363 (2003) .................................................................................. 22

*Ovando v. Cty. of Los Angeles*,
    159 Cal. App. 4th 42 (2008) ......................................................................................... 7

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007) ...................................................................................... 19

Gibson, Dunn &
Crutcher LLP

iv

*Plumlee v. Pfizer, Inc.,*
 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ........................................................ 10

*Presley v. Graham,*
 936 F. Supp. 2d 1316 (M.D. Ala. 2013) ........................................................ 21

*Puma SE v. Forever 21, Inc.,*
 2017 WL 4771004 (C.D. Cal. June 29, 2017) ........................................................ 5

*Quesada v. Banc of Am. Inv. Servs., Inc.,*
 2012 WL 34228 (N.D. Cal. Jan. 6, 2012) ........................................................ 8

*Radfer Trust v. First UNUM Life Ins. Co. of Am.,*
 2004 WL 2385000 (N.D. Cal. Oct. 25, 2004) ........................................................ 24

*Ramirez v. Wong,*
 188 Cal. App. 4th 1480 (2010) ........................................................ 16

*Rohm v. Homer,*
 367 F. Supp. 2d 1278 (N.D. Cal. 2005) ........................................................ 11

*Rojo v. Kliger,*
 52 Cal. 3d 65 (1990) ........................................................ 11

*Rotary Club of Duarte v. Bd. of Directors,*
 178 Cal. App. 3d 1035 (1986) ........................................................ 11

*Sateriale v. R.J. Reynolds Tobacco Co.,*
 697 F.3d 777 (9th Cir. 2012) ........................................................ 5, 17

*Seelig v. Infinity Broadcasting Corp.,*
 97 Cal. App. 4th 798 (2002) ........................................................ 19

*Sherrill v. G & K Servs., Inc.,*
 2014 WL 6670064 (C.D. Cal. Nov. 21, 2014) ........................................................ 17

*Shively v. Bozanich,*
 31 Cal. 4th 1230 (2003) ........................................................ 7

*Slaughter v. Friedman,*
 32 Cal. 3d 149 (1982) ........................................................ 22

*South Bay Chevrolet v. General Motors Acceptance Corp.,*
 72 Cal. App. 4th 861 (1999) ........................................................ 23

Gibson, Dunn &
Crutcher LLP

*Stamps v. Superior Court*,
    136 Cal. App. 4th 1441 (2006) .........................................................2, 10, 11

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................................... 5

*Strother v. S. Cal. Permanente Med. Grp.*,
    79 F.3d 859 (9th Cir. 1996) ...................................................................... 11

*Stutz Motor Corp. of America, Inc. v. Reebok Int'l Ltd.*,
    909 F. Supp. 1353 (C.D. Cal. 1995) ......................................................... 24

*Suh v. Yang*,
    987 F. Supp. 783 (N.D. Cal. 1997) ........................................................... 25

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) .............................................................. 18, 19

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204 (9th Cir. 1995) ...................................................................... 7

*Viera v. Bank of Am.*,
    2015 WL 12752882 (C.D. Cal. Oct. 28, 2015) ........................................ 25

*Yelp Inc. v. Superior Court*,
    17 Cal. App. 5th 1 (2017) .................................................................... 20, 21

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) .................................................................... 24

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................3, 4, 23, 25

Cal. Civ. Code § 46 ....................................................................................24

Cal. Civ. Code § 47 ..........................................................................17, 22, 23

Cal. Civ. Code § 51.5 ................................................................................11

Cal. Civ. Code § 51.9 ..........................................2, 8, 9, 10, 11, 12, 13, 14, 15, 24

Cal. Civ. Code § 52 ....................................................................................10

**Rules**

Fed. R. Civ. P. 12 ................................................................................................. 5, 6, 24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-05724-PSG

# I.   INTRODUCTION

Harvey Weinstein's motion to dismiss is a baseless and offensive study in misdirection that demonstrates his malicious and reckless disregard for the law and for Ms. Judd's rights to be free from sexual harassment and retaliation.  It ignores and misstates key allegations in the complaint, impermissibly cites (contradictory) extrinsic evidence, and relies heavily on cases interpreting a statute that has nothing to do with this case.  Weinstein also makes the bizarre argument that he purportedly sought to advance Ms. Judd's career as part of a "deal" for sex that Weinstein presents as real—rather than the decidedly "*mock* bargain" Ms. Judd alleges she made in her complaint. He even claims that Ms. Judd was no "ingénue in the film business when she went to Weinstein's hotel room," saying that she was "well-versed in the entertainment industry" and suggesting that she should have known that a purported business meeting with Weinstein really was a "casting couch" invitation.  To state the obvious: conditioning career advancement on sex is textbook harassment.  And that is exactly the principle Ms. Judd is seeking to vindicate through this action.  When Ms. Judd's *actual* allegations and the *applicable* law are considered, it is clear that none of Weinstein's arguments is sufficient to defeat the well-pleaded allegations in Ms. Judd's complaint and to permit him to shirk responsibility for the significant professional harm he inflicted on her.

*First*, Weinstein seeks refuge behind the statute of limitations. Dkt. 11-1 ("Mot.") at 5-7, 10-12, 16.  But California courts have adopted an exception to statutes of limitations—the "delayed discovery rule"—precisely because a defendant like Weinstein, whose misconduct occurred in secret and was concealed for years, should not be allowed to benefit from his subterfuge.  The precise operation of the discovery rule under a given set of facts cannot be resolved on a motion to dismiss.  Indeed, the Ninth Circuit has recognized that California's test for whether to toll the statute of limitations is "fact-intensive," with California courts likewise making clear that application of the discovery rule is a "question of fact."

Regardless, the factual question can be resolved squarely in Ms. Judd's favor. While Ms. Judd was all too aware of Weinstein's harassing conduct towards her in the late 1990s at the Peninsula Hotel, what she did ***not*** know until December 2017 was that Weinstein secretly retaliated against her. That realization did not happen, and could not have happened, until Peter Jackson disclosed that Weinstein smeared Ms. Judd's professional reputation and poisoned her chances of working with Mr. Jackson and Fran Walsh on the wildly successful *Lord of the Rings* trilogy and their future films. Ms. Judd had no reason to link her rejection of Weinstein's sexual advances with the fact that Mr. Jackson and Ms. Walsh dropped her from their plans for *The Lord of the Rings*. Weinstein's statute-of-limitations arguments thus fail on their face.

*Second*, Weinstein argues that Ms. Judd's harassment claim under Civil Code section 51.9 should be dismissed because it is part of the Unruh Act, which he claims does not apply to disputes like this one. Mot. at 6-7. But Ms. Judd's harassment claim has nothing to do with the Unruh Act and its regulation of "business establishments" (*Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1450, 1452 (2006)), making Weinstein's arguments and authority inapposite. Moreover, Ms. Judd has sufficiently alleged an ongoing business and professional relationship with drastically unequal bargaining power as required by Civil Code section 51.9. She has also alleged the elements of *quid pro quo* harassment, and, to the extent the statute even requires such allegations, harassment that was severe and pervasive enough to create a hostile environment.

*Third*, Weinstein argues that Ms. Judd's defamation claim fails because he did not personally make the statements about Ms. Judd to Mr. Jackson and Ms. Walsh, because they are non-actionable opinions, and because they are protected by the common-interest privilege. Mot. at 13-16. These arguments also fail. Ms. Judd repeatedly alleges that Weinstein made the statements, and her allegations must be taken as true in deciding a motion to dismiss. Moreover, the statements are actionable because, in context, they state, or at least imply, objective, verifiable facts about Weinstein's experience and

interactions with Ms. Judd and her professionalism as an actor.  Indeed, Weinstein fails to address the allegation that he falsely claimed Miramax had a "bad experience" with Ms. Judd.  *See* Mot. at 15.  Finally, the statements are not protected by the common-interest privilege because Weinstein made them with malice—knowing they were false and intending to injure Ms. Judd.  Indeed, Weinstein's invocation of this privilege is an admission that he had—and exercised—the power to block her from getting acting jobs.

*Fourth*, Weinstein argues that Ms. Judd's claim for intentional interference with prospective economic advantage is time-barred.  Mot. at 16.  As explained above, however, the claim is timely because it accrued in December 2017, when Ms. Judd became aware of the connection between her rejection of Weinstein's advances and being passed over for a role in *The Lord of the Rings*.

*Fifth*, Weinstein argues that Ms. Judd's claim for violation of Business and Professions Code section 17200 fails because she has not alleged an underlying violation of law.  Mot. at 17-18.  Ms. Judd has sufficiently alleged such violations, and also sufficiently alleges that Weinstein engaged in unfair conduct by disparaging her and lowering the amount she could charge for her acting services.  Either is sufficient to state a claim under section 17200.

Weinstein's arguments thus all lack merit and his motion should be denied.

## II.  FACTUAL BACKGROUND

In or around late 1996 or early 1997, Harvey Weinstein invited Ms. Judd to the Peninsula Hotel for what was billed as a business meeting.  Dkt. 1-1 ¶ 24.  When she arrived, she was told to go to Weinstein's hotel room, where he appeared wearing only a bathrobe.  *Id*. ¶ 25.  Rather than discuss business, Weinstein launched into a series of demands: to give her a massage, to shower while she watched, to help him pick out clothes.  *Id*.  Ms. Judd refused, but Weinstein persisted.  *Id*.  Cornered and alone in Weinstein's hotel room, and believing that he intended to physically assault her, Ms. Judd engaged in a mock bargain to escape: when Weinstein suggested she should let him touch her when she was nominated for an Academy Award in one of his films,

she retorted that she would only consider it if she won. *Id*. Weinstein would lord this "agreement" over Ms. Judd in the years to come—indeed, he continues to do so in his motion to dismiss. *Id*. ¶ 27; Mot. at 16 (claiming that his efforts to have Ms. Judd cast in *Good Will Hunting* "reflect[] his motivation to advance her career" and to "live up to his part of the bargain").

In or around 1998, Ms. Judd was engaged in serious discussions with Mr. Jackson and Ms. Walsh to play a major role in the *Lord of the Rings* trilogy. Dkt. 1-1 ¶ 28. This was no exploratory or preliminary meeting: Mr. Jackson and Ms. Walsh gave Ms. Judd rare creative insight into their vision for the films, including access to ideas, story boards, and costumes, as well as information about another actor (Viggo Mortensen) who would go on to play a leading role in all three films. *Id*. ¶¶ 28-29. These signs all pointed to Ms. Judd's advanced position in the casting process. *Id*.

Because Miramax held the rights to the *Lord of the Rings* films at that time, Weinstein was actively involved in discussions regarding their casting. Dkt. 1-1 ¶ 30. Mr. Jackson and Ms. Walsh therefore informed Miramax and Weinstein of their desire to cast Ms. Judd in the films. *Id*. In response, Weinstein told Mr. Jackson and Ms. Walsh "in confidence" that Miramax had had a "bad experience" working with Ms. Judd in the past, that she was "a nightmare to work with," and that they "should avoid [her] at all costs." *Id*. "[A]s a direct result" of these statements, Mr. Jackson and Ms. Walsh reversed course and decided not to cast Ms. Judd in the *Lord of the Rings* films. *Id*. ¶ 38. The trilogy would go on to become a blockbuster hit, earning billions of dollars, 30 Academy Award nominations, and 17 Academy Awards. *Id*. ¶ 36.

At the time, Ms. Judd did not know why she was not cast in *The Lord of the Rings*, and was unaware of Weinstein's statements about her. Dkt. 1-1 ¶ 35. She did not press Mr. Jackson and Ms. Walsh for information, because she believed that doing so would alienate them and negatively affect their willingness to consider her for future projects. *Id*. Even if she had inquired, however, Mr. Jackson and Ms. Walsh would not have disclosed Weinstein's statements to her because the statements were made in confidence

1   and because they were concerned about damaging their relationship with him.  *Id.*
2   In December 2017, Ms. Judd learned for the first time why she did not receive the role—
3   after Ms. Judd and others publicly discussed their experiences with Weinstein's pattern
4   of sexual harassment and abuse, Mr. Jackson gave an interview in which he stated that
5   Weinstein had made the statements described above almost twenty years ago, that he
6   believed the statements were part of a "smear campaign" against Ms. Judd, and that
7   Mr. Jackson and Ms. Walsh did not cast Ms. Judd "as a direct result" of those statements.
8   *Id.* ¶ 38.  This suit followed on April 30, 2018.  Dkt. 1-1.

9                              **III.  LEGAL STANDARD**

10          A Rule 12(b)(6) motion to dismiss must be denied when the complaint "contain[s]
11   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
12   its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*
13   *Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff need only plead factual content
14   sufficient to allow a court to "draw the reasonable inference that the defendant is liable
15   for the misconduct alleged."  *Id.* at 678.  Although the plausibility standard asks for more
16   than a sheer possibility, it "is not akin to a 'probability requirement[.]'"  *Puma SE v.*
17   *Forever 21, Inc.*, 2017 WL 4771004, at *2 (C.D. Cal. June 29, 2017) (quoting *Iqbal*, 556
18   U.S. at 678).

19          At this stage, the Court must accept Ms. Judd's factual allegations as true and
20   draw all inferences in the light most favorable to her.  *Sateriale v. R.J. Reynolds Tobacco*
21   *Co.*, 697 F.3d 777, 783 (9th Cir. 2012); *Martin v. Tradewinds Beverage Co.*, 2017 WL
22   6816608, at *2 (C.D. Cal. Sept. 5, 2017).  "If there are two alternative explanations, one
23   advanced by defendant and the other advanced by plaintiff, both of which are plausible,
24   plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*,
25   652 F.3d 1202, 1216 (9th Cir. 2011).  A court need not decide whether the plaintiff's
26   explanation is true or even probable.  *Id.* at 1216-17.

27

28

# IV.  ARGUMENT

## A.    Ms. Judd's Claims Are Timely

Weinstein's main argument is that the statute of limitations bars Ms. Judd's claims.  Mot. at 5-7, 10-12, 16.  He is wrong.  Because Weinstein's statements were concealed for years and thus were not discoverable by Ms. Judd, under the delayed discovery rule her claims did not accrue until Mr. Jackson publicly disclosed those statements in December 2017.[1]  Ms. Judd's allegations, which must be accepted as true at this stage of the proceedings, make clear that the delayed discovery rule tolled all of her claims under the circumstances.  But to the extent there is any question whether the discovery rule applies to this particular case, it is a question of fact that cannot be resolved on a motion to dismiss.

Weinstein's speculation about what Ms. Judd had the "wherewithal" to do as a "professional actor," and assertion that two seemingly disconnected events "should have raised [her] suspicion that they were somehow connected" because they occurred in the same two-year period (Mot. at 12-13), only confirms the fact-intensive nature of the analysis.  The Ninth Circuit has made clear that "[w]here the cause of action was belatedly discovered, the issue whether the plaintiff exercised reasonable diligence is a question of fact."  *Nevada Pwr. Co. v. Monsanto Co.*, 955 F.2d 1304, 1308 (9th Cir. 1992) (internal quotations omitted); *accord Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005) ("Resolution of the statute of limitations issue is normally a question of fact.").  Thus, the applicability of the discovery rule "is not generally amenable to resolution on a Rule 12(b)(6) motion," and in fact "a complaint ***cannot*** be dismissed unless it appears ***beyond doubt*** that the plaintiff can prove ***no*** set of facts that would

---

[1] Indeed, if anything, Weinstein should be estopped from advancing this defense at all given that he deliberately made the statements to Mr. Jackson and Ms. Walsh "in confidence" and with the intent that they not be disclosed, and thereby concealed them from Ms. Judd.  *See, e.g., Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (discussing elements of equitable estoppel under California and federal common law); *Baker v. Cohen*, 2010 WL 11515458, at *2 (C.D. Cal. Feb. 18, 2010) ("Equitable estoppel may bar the statute of limitations defense when a defendant misrepresents or conceals facts necessary to support a claim.").

Gibson, Dunn & Crutcher LLP

establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (internal quotations omitted, emphasis added).

Weinstein cannot meet that standard.  Among other things, as noted below, Ms. Judd's complaint alleges that Mr. Jackson and Ms. Walsh would not have revealed Weinstein's false statements to her if she pressed them for an explanation of her non-casting in *The Lord of the Rings*.  Any dispute regarding the reasonableness of Ms. Judd's investigation (or lack thereof) under the circumstances is a question of fact that cannot be decided on the pleadings.  *See Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61, 71 (2008) ("The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion."). Especially where all inferences must be drawn in Ms. Judd's favor, it is clear that "California's fact-intensive test for equitable tolling," *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993), demands the denial of Weinstein's motion to dismiss.

Ms. Judd's allegations clearly demonstrate the applicability of the delayed discovery rule in any event.  That rule provides that the statute of limitations does not begin to run until "the plaintiff knew (or with reasonable diligence should have known) of the factual basis for the claim." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1237 (2003). This exception exists for good reason:  where the defendant is in a "superior position to comprehend the act and the injury," the statute of limitations—an equitable doctrine— should not bar a plaintiff from recovery by allowing the defendant to "profit [off the] injuree's ignorance." *Apr. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 831 (1983). Each of Ms. Judd's claims is subject to the delayed discovery rule.  *E.g.*, *Shively*, 31 Cal. 4th at 1247-48 (defamation); *Denver Urban Homesteading, LLC v. Dervaes Inst.*, 2015 WL 12819140, at *3 (C.D. Cal. July 15, 2015) (intentional interference with prospective economic advantage); *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1196 & n.5 (2013) (Cal. Bus. & Prof. Code § 17200) ("It would be inconsistent to conclude that while equity may drive the available remedies under the UCL, equitable

exceptions have no place in determining whether a claim for relief has been timely asserted in the first instance.").[2]

To invoke the delayed discovery rule, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. Ms. Judd has pleaded facts to establish both elements: *First*, she alleges she learned about Weinstein's retaliatory and defamatory statements and how they caused her not to be cast in *The Lord of the Rings* after Mr. Jackson's December 2017 interview disclosing the same. Dkt. 1-1 ¶¶ 30, 38. *Second*, Ms. Judd alleges she could not have discovered the statements and their impact on her career earlier because they were made "in confidence" to Mr. Jackson and Ms. Walsh about a "valuable film project," disclosure "would have risked damaging [Mr. Jackson and Ms. Walsh's] relationship" with Weinstein, and Ms. Judd believed that "asking Ms. Jackson and Ms. Walsh why she was removed from consideration would have risked alienating them and negatively affected their willingness to consider her for future projects." *Id*. ¶¶ 35, 59.

Indeed, Ms. Judd alleges explicitly that if she had asked Mr. Jackson and Ms. Walsh why they removed her from consideration for *The Lord of the Rings*, "***they would not have disclosed the statements Weinstein made about her***." Dkt. 1-1 ¶ 35 (emphasis added). Therefore, any investigation by Ms. Judd into the reasons why she did not secure the role would have been futile. *See, e.g.*, *Quesada v. Banc of Am. Inv. Servs., Inc*., 2012 WL 34228, at *2 (N.D. Cal. Jan. 6, 2012) (finding that an investigation would have been futile where "the only source of information [regarding the plaintiff's claim] was a letter from an employee of" the defendant which was not reasonably accessible to the plaintiff); *Matsumoto v. Republic Ins. Co*., 792 F.2d 869,

---

[2] While few courts have analyzed the application of the statute of limitations to claims under Civil Code section 51.9, the delayed discovery rule presumptively applies because the claim is grounded in tort. *See NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1233 (2014) (recognizing the discovery rule applies to most tort actions).

872 (9th Cir. 1986) (finding futility where the material facts were "concealed or misrepresented").

Weinstein nonetheless argues that the delayed discovery rule does not apply to Ms. Judd's harassment claim because she was aware of his harassment in 1996 and knew that she had been injured by it.  Mot. at 6.  But Ms. Judd's claim addresses Weinstein's professional retaliation against her *after* she resisted his sexual advances.  *See In re Conseco Ins. Co. Annuity Mktg. & Sales Practices*, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) ("[T]he statute of limitations does not begin to run until the plaintiff discovered or had notice of *all facts which are essential to the cause of action*.") (emphasis added).

Ms. Judd of course knew in 1997 that Weinstein had lured her to his hotel room under false pretenses and that she was alone in the locked room when the physically imposing Weinstein sexually propositioned her while wearing a bathrobe.  That is undisputed, and Ms. Judd has been aware of the emotional impact of Weinstein's actions at the Peninsula ever since (not least because he repeatedly taunted her about it afterward).  But what Ms. Judd did *not* know until several months ago was that Weinstein used his power and influence to significantly damage her career.  *That* injury, and Weinstein's responsibility for it, is a necessary part of her claim.  *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (recognizing that under section 51.9, to adequately plead a *quid pro quo* harassment claim, plaintiff must identify a tangible action that resulted from her refusal to acquiesce to sexual requests); *see also* Cal. Civ. Code § 51.9(a)(4) (requiring plaintiff to establish "economic loss or disadvantage . . . as a result" of the harassing conduct).  Ms. Judd was unable to discover the professional harm Weinstein caused her until Mr. Jackson revealed Weinstein's malicious falsehoods in December 2017.

Weinstein also argues that Ms. Judd cannot rely on the delayed discovery rule with respect to her defamation claim because she should have been "suspicio[us]" that Weinstein's behavior at the Peninsula Hotel "[was] somehow connected" to Mr. Jackson

and Ms. Walsh's decision not to cast her in *The Lord of the Rings*.  Mot. at 11-13.  That is apparently only with the benefit of hindsight and in any event cannot be the law. Under Weinstein's standard, sexual harassment victims would be required to investigate any future adverse employment action to determine whether it was caused by their harasser.  There is simply no legal, or practical, support for such a requirement, and Weinstein does not point to any.  Instead, the relevant question is whether Ms. Judd had "knowledge of facts sufficient to put [her] on inquiry" of her injury.  *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at \*8 (N.D. Cal. Feb. 21, 2014) (citation omitted).  Here, nothing suggests Ms. Judd should have been "on inquiry" that Weinstein made retaliatory and defamatory statements to Mr. Jackson and Ms. Walsh in confidential discussions to block her casting in *The Lord of the Rings*.

## B.   Ms. Judd Has Sufficiently Stated A Claim For Civil Harassment

To plead a claim for civil harassment, Ms. Judd must allege that (1) she had a "business, service, or professional relationship" with Weinstein; (2) Weinstein made "sexual advances, solicitations, sexual requests, demands for sexual compliance, . . . or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe"; (3) she was unable "to easily terminate the relationship"; and (4) she has suffered or will suffer harm, that can include "economic loss or disadvantage."  Cal. Civ. Code §§ 51.9, 52. Ms. Judd's allegations, which must be taken as true at this stage of the proceedings, establish each of the elements of civil harassment under section 51.9.

As an initial matter, Weinstein improperly and repeatedly attempts to recast Ms. Judd's section 51.9 civil harassment claim as having been brought "under the Unruh Act."  Mot. at 7; *see also id.* ("deciding Unruh Act cases . . . is a question of law").  That is legally incorrect: section 51.9 is not part of the Unruh Act.  *Stamps*, 136 Cal. App. 4th at 1450 ("By its own terms, the Unruh Civil Rights Act comprises only section 51."); *Macias v. Lange*, 2016 WL 1274762, at \*16 (S.D. Cal. Apr. 1, 2016) (holding that it is improper to analyze a section 51.9 claim as an Unruh Act claim).  The Unruh Act "is a

public accommodations statute that focuses on discriminatory behavior by business establishments." *Stamps*, 136 Cal. App. 4th at 1452. It is entirely distinct from the section 51.9 claim in this case, which "deals with sexual harassment where there exists a business, service, or professional relationship between the parties." *Id.* at 1453 n.14 (internal quotations omitted).

In fact, if there is any doubt as to whether section 51.9 and the Unruh Act are the same, Weinstein's own cited authority lays that doubt to rest: even though "Civil Code section 51.9 has sometimes been described as being part of the [Unruh Act], presumably because of . . . close proximity," "section 51 is the **only statute** comprising the [Unruh Act]." *Hughes*, 46 Cal. 4th at 1044 n.1 (emphasis added). The Unruh Act has different elements than Ms. Judd's claim, derives from the common law rather than statutory law, and addresses different factual scenarios than what Ms. Judd has alleged. It is simply a different law, and Weinstein's purported legal support for his arguments have no bearing on the actual claim in this case.[3] Accordingly, Weinstein's efforts to dismiss this claim based on arguments about the Unruh Act fail.

---

[3] *See, e.g., Gayer v. Polk Gulch, Inc.*, 231 Cal. App. 3d 515, 524 (1991) (*before* Civil Code section 51.9 was even enacted, analyzing whether section 51 (the Unruh Act) covers a type of discrimination); *Frantz v. Blackwell*, 189 Cal. App. 3d 91, 96 (1987) (same); *Rojo v. Kliger*, 52 Cal. 3d 65, 77 (1990) (same); *Rotary Club of Duarte v. Bd. of Directors*, 178 Cal. App. 3d 1035, 1050 (1986) (*before* enactment of section 51.9, analyzing a definitional requirement of section 51); *Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493 (1970) (same); *see also Johnson v. Riverside Healthcare System, LP*, 534 F. 3d 1116, 1124 (9th Cir. 2008) (analyzing the Unruh Act and Cal. Civ. Code § 51.5); *Leramo v. Premier Anesthesia Med. Grp.*, 2011 WL 2680837, at *18 (E.D. Cal. July 8, 2011), *aff'd*, 514 F. App'x 674 (9th Cir. 2013) (same); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 875 (9th Cir. 1996), *as amd. on den. of reh'g* (Apr. 22, 1996), *as amd. on den. of reh'g* (June 3, 1996) (same). The only two cases Weinstein cites that even reference section 51.9 are equally distinguishable. *See Brown v. Smith*, 55 Cal. App. 4th 767, 788 (1997) (holding the conduct at issue was not subject to liability under section 51.9 because it occurred in 1991, before the statute was enacted); *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1287 (N.D. Cal. 2005) (holding that section 51.9 did not apply to an employee, but allowing plaintiff's Title VII and FEHA claims, both of which do apply to employer-employee relationships, to proceed against supervisors).

Gibson, Dunn &
Crutcher LLP

### 1. Ms. Judd Has Pleaded That She Was In A Business And Professional Relationship Of Drastically Unequal Power With Weinstein As Required By Section 51.9

Weinstein next contends that Ms. Judd's harassment claim should be dismissed because her relationship with Weinstein is "a potential employment relationship . . . not encompassed within [Civil Code section 51.9]." Mot. at 7. He then goes on to cherry-pick from the twenty examples in the statute—calling out only five categories of what he calls "service[]" providers—to assert that Ms. Judd's claim should fail because she did not allege Weinstein "provid[ed her] with [a] business or professional service[]." *Id*. at 8. These arguments ignore the plain text of the statute as well as the facts as pleaded.

*First*, section 51.9(a) protects individuals in a wide variety of drastically unequal power relationships which are not necessarily limited to employment, fiduciary, or service contexts. By its plain terms, the statute applies to those in "[a] relationship that is substantially similar" to one of twenty non-exhaustive ***examples*** of business, service, or professional providers. Mot. at 7 (quoting Cal. Civ. Code § 51.9(a)). The common thread running through the examples is not that they arise in a non-employment context, service context, or even fiduciary context. Instead, as even Weinstein concedes, they are "relationships of trust."[4] And more precisely, they are relationships in which one party has significantly more power than the other, and in many cases, where one party serves as the gatekeeper to the other party's financial success. That thread exists because, as the legislative history of the statute makes clear, the statute was designed to address "***power relationships***" in a number of "non-employment situations" that arise "in business, service, and professional" contexts. *See* Plaintiff's Request for Judicial Notice ("RJN"), Ex. 1 at 3-4, 5 [California Bill Analysis, A.B. 519 Sen., July 7, 1999] (emphasis added).

Ms. Judd expressly has alleged that she and Weinstein were in the very type of

---

[4] Examples include trustees, executors, administrators, trust officers, bankers, accountants, real estate agents, real estate appraisers, financial planners, collection service, and loan officers. Cal. Civ. Code § 51.9(a).

Gibson, Dunn &
Crutcher LLP

drastically unequal power relationship contemplated by section 51.9.  She alleged that Weinstein, as an established and (at the time) highly influential film producer, held more power in their relationship as compared to her, then a "young newcomer to Hollywood." Dkt. 1-1 ¶¶ 62, 65.  He was a "gatekeeper to many desirable roles and film projects" (*id.* ¶ 24), and "was one of the most powerful and influential producers in the film business" (*id.* ¶ 10).   As alleged in the complaint, Weinstein's power and influence extended beyond Miramax; he was a "dominant figure in the film business" and could alter the path of someone's career whether or not it was in one of his films.  *Id.* ¶ 24.  And "[b]ecause of [the] uniquely powerful role in the ***industry*** in which Ms. Judd worked … she was unable to easily end the relationship with Weinstein."  *Id.* ¶ 65 (emphasis added).  Weinstein argues that he and Ms. Judd "were not doing business" (Mot. at 8-9), but that is exactly why Ms. Judd was meeting with him.

Weinstein also contends that at the time Ms. Judd met him at the Peninsula "none of her credits were in Miramax productions."  Mot. at 9.  Again, Weinstein is simply wrong.  Ms. Judd had previously appeared in a Miramax film, *Smoke* (albeit without direct interaction with Weinstein). Dkt. 1-1 ¶ 31.  Further, at the time of the harassment, she "was actively seeking acting roles in films" (*id.* ¶ 62), and, as Weinstein himself takes pains to emphasize, she was later cast in two other Miramax films (*id.* ¶ 31; Mot. at 16).  These allegations alone suffice to establish that Weinstein and Ms. Judd had a "business, service, or professional relationship" that Ms. Judd could not "easily terminate" within the purview of section 51.9.

*Second*, Weinstein contends that section 51.9 should not apply because he and Ms. Judd were not in a formal employment relationship.  Mot. at 7-8.  But no contractually formalized relationship is required to establish liability. To the contrary, as the legislative history shows, the statute is intended to provide an "express sexual harassment [protection] scheme for ***non-employment situations***."  RJN, Ex. 1 at 3 [California Bill Analysis, A.B. 519 Sen., July 7, 1999] (emphasis added); *Hughes*, 46 Cal. 4th at 1048 (recognizing section 51.9 applies to "sexual harassment in professional

Gibson, Dunn &
Crutcher LLP

relationships *outside the workplace*," unlike FEHA and Title VII, which apply "*in the workplace*").

　　*Third*, Weinstein suggests that section 51.9 should not apply because he was not in an ongoing relationship and "doing business" with Ms. Judd.  Mot. at 9.  But his own efforts to undermine Ms. Judd's claim betray that contention.  In a bewildering attempt to characterize his actions as benevolent rather than retaliatory, Weinstein argues that he was actually "advanc[ing]," "not ruin[ing]," Ms. Judd's career and trying to "live up to his part of the bargain" when he supposedly attempted to cast her in *Good Will Hunting* and in other films.  *Id*. at 16.  This tacit admission corroborates Ms. Judd's allegations about Weinstein's manipulative *modus operandi* with respect to sexually harassing female actors.  It also confirms the ongoing nature of their business relationship and makes clear that his relationship with Ms. Judd falls within the reach of section 51.9.  To be clear: Offering work in exchange sex is the very definition of *quid pro quo* harassment.  *See Mogilefsky v. Superior Court*, 20 Cal. App. 4th 1409, 1414 (1993) ("A cause of action for quid pro quo harassment involves the behavior most commonly regarded as sexual harassment, including, e.g., sexual propositions.").

　　To the extent there is a dispute regarding whether Ms. Judd and Weinstein were in a relationship "substantially similar" to those listed in section 51.9, that is a question of fact to be decided at a later stage of proceedings.  *See C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1106 (2009), *as mod. on den. of reh'g* (Feb. 3, 2009).  In *Tenet Healthcare*, the plaintiff alleged that defendant's "responsibilities . . . were substantially similar to those [of]" one of the enumerated types of individuals.  *Id.*  The court held that this allegation was sufficient at the pleading stage and observed that the defendant's "exact duties and his relationship with women" could be "fully litigated in a summary judgment proceeding or trial."  *Id.*  Here, Ms. Judd has alleged that she was in an "ongoing" "business relationship" with Weinstein (insofar as she appeared in Miramax films before and after the Peninsula Hotel incident), that he was a "gatekeeper" to film roles, and that he "controlled Ms. Judd's access" to the roles she wanted.  Dkt. 1-1 ¶ 62.

The "exact" nature of Weinstein's power "and his relationship with [Ms. Judd]" "depends on the facts" and need not be alleged in detail to overcome a motion to dismiss. *Tenet Healthcare*, 169 Cal. App. 4th at 1106.

### 2. Ms. Judd Has Pleaded The Requisite Conduct To Warrant A Finding Of Liability Under Section 51.9

Weinstein suggests that because his "unwanted sexual advances occurred on a single day and consisted of him asking to give [Ms. Judd] a massage . . . and asking her to watch him shower," the "allegations fall far short of meeting the 'pervasive or severe' required element" of a civil harassment claim. Mot. at 9. Weinstein is again wrong about what the law requires.

*First*, Weinstein incorrectly assumes that only one theory of harassment is available under section 51.9. As his own cited authorities make clear, however, a defendant can be liable for either (i) *quid pro quo* harassment or (ii) pervasive or severe, hostile-environment harassment. *Hughes*, 46 Cal. 4th at 1048, 1049; *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). To allege *quid pro quo* sexual harassment, a plaintiff need only "identif[y] . . . tangible ***retaliatory conduct*** by defendant in the context of their professional relationship." *Hughes*, 46 Cal. 4th at 1050 (analyzing *quid pro quo* harassment without the severe or pervasive requirement). Only if a plaintiff cannot identify retaliatory conduct must she plead the existence of conduct that is so "pervasive or severe" as to alter the conditions of the underlying relationship between the parties. *See id.* at 1048-50.

Here, Ms. Judd specifically alleges retaliatory conduct by Weinstein after she rejected his sexual advances. Dkt. 1-1 ¶ 25. As her complaint states, in response to her "refusal to acquiesce to his improper demands," Weinstein made false statements to Mr. Jackson and Ms. Walsh causing them to "terminate[] their efforts to cast [her] in what became a multi-billion-dollar, award-winning film franchise." *Id.* ¶ 67. That is all that is required at this stage of the proceedings. *Cf. Hughes*, 46 Cal. 4th at 1050 (holding that because "[p]laintiff has not alleged that, because she rejected [defendant's] sexual

1   overtures, defendant thereafter followed through on his alleged threat by using his

2   authority . . . to cause financial injury or hardship" she had not identified "tangible

3   retaliatory conduct" to establish *quid pro quo* harassment).

4       *Second*, even if Ms. Judd were required to plead that Weinstein engaged in severe

5   or pervasive conduct under a hostile-environment theory of liability, she has done so.

6   Weinstein's primary contention on this point is that because his "sexual advances

7   occurred on a single day" and did not involve any direct physical contact, his "conduct

8   was *not* sufficiently pervasive or severe" to constitute actionable harassment. Mot. at 9,

9   10 (emphasis in original).  But a single, "isolated incident of harassing conduct may

10  qualify as 'severe'" where (as here) it consists of a threat of physical assault. *Hughes*,

11  46 Cal. 4th at 1049 (quoting *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264,

12  284 (2006)).  Ms. Judd explicitly alleged that Weinstein's "conduct and statements" "in

13  the locked hotel room," including his request to physically massage her, "constituted a

14  threat of physical assault."  Dkt. 1-1 ¶¶ 25, 64.  And unlike *Ramirez v. Wong*, 188 Cal.

15  App. 4th 1480, 1487 (2010), relied upon by Weinstein, in which the allegedly wrongful

16  conduct (a property manager sniffing underwear when the tenants were not home)

17  "involv[e]d no interaction between plaintiffs and the [defendants]," here, Ms. Judd has

18  alleged both that she interacted with Weinstein and that he physically threatened her.

19  He then lorded the event over her for years, showing the harassment was "pervasive."

20      In any event, because Ms. Judd has alleged that his acts were "severe" and

21  "unwelcome," the answer to the question "whether [p]laintiff has adequately alleged a

22  sexual harassment claim . . . [is] an easy yes." *Kremer v. Zillow, Inc.*, 2015 WL 438418,

23  at *4 (C.D. Cal. Feb. 3, 2015).  "This is particularly so because sexual harassment is

24  determined based on the totality of the circumstances and often depends on the parties'

25  credibility and the reasonableness of the parties' behavior," all of which are "questions

26  that are best decided by a jury or a court after a complete record is developed." *Id.*

27      Because Ms. Judd has adequately alleged each of the requisite elements for civil

28  harassment, the Court should deny Weinstein's motion to dismiss this claim.

**C.    Ms. Judd States A Claim For Defamation**

To plead a claim for defamation in California, a plaintiff must allege "(1) [the] publication of a statement, (2) which is false, (3) defamatory, (4) unprivileged, and (5) either has a natural tendency to injure or causes special damages." *Sherrill v. G & K Servs., Inc.*, 2014 WL 6670064, at *5 (C.D. Cal. Nov. 21, 2014); *accord Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259 (2017).   Ms. Judd's well-pleaded factual allegations, which must be taken as true, establish the existence of each of these elements.   Weinstein argues that he did not make the statements in question, that they are non-actionable opinions, and that they are protected by the "common interest doctrine" set forth in California Civil Code section 47(c).   All of these arguments lack merit.

**1.    Ms. Judd Has Pleaded That Weinstein Made The Defamatory Statements**

Weinstein's first line of attack is to dispute that he was the source of the defamatory statements, contending that they were made by "an unnamed person or persons *at Miramax*." Mot. at 14.  Again, though, for purposes of resolving a motion to dismiss, the Court must accept Ms. Judd's factual allegations as true. *Sateriale*, 697 F.3d at 783.  Ms. Judd pled, on information and belief, that it was Weinstein who made the statements. *E.g.*, Dkt. 1-1 ¶ 30 ("Miramax (*i.e., Weinstein*) told [Mr. Jackson] and Ms. Walsh, in confidence, that Ms. Judd . . . [was] 'a nightmare to work with . . .'"); ¶ 31 ("These statements of purported fact, **made by Weinstein**, were false."); *id.* (discussing "[t]he malicious statements of purported fact **that Weinstein made** to Mr. Jackson and Ms. Walsh about Ms. Judd . . .").  Weinstein cites to one article that reported that Mr. Jackson attributed the statements generally to Miramax (Mot. at 13), but that article is not the only evidence of Weinstein's statements. Ms. Judd's *complaint* resolves the issue, not one piece of evidence cited within it, and the complaint identifies Weinstein as the speaker multiple times and points to sources beyond one article that support her belief that it was Weinstein who made the statements. Dkt. 1-1 ¶ 31; *see*

Gibson, Dunn & Crutcher LLP

*also id.* (alleging that "Mr. Jackson and Ms. Walsh contemporaneously relayed these disparaging statements about Ms. Judd . . . to at least one other individual").  Moreover, even if someone else at Miramax made the statements, Ms. Judd's allegations nonetheless support her claim because they show that Weinstein, given his control of Miramax, "took a responsible part in" the statements.  *Hawran v. Hixson*, 209 Cal. App. 4th 256, 275-76 (2012) (holding that individual liability is appropriate for company's publication of defamatory statement when individual "participat[ed] in publication"); Dkt. 1-1 ¶¶ 6, 11, 65 (allegations relating to Weinstein's plenary control of Miramax).

## 2.   Weinstein's Statements Imply An Actionable False Assertion Of Fact

Weinstein next argues that his statements about Ms. Judd are not defamatory because they are not "statements of fact" and "cannot be factually proven or disproven." Mot. at 14-15.  This argument also fails.  A statement can form the basis of a defamation action if "a reasonable fact finder could conclude" that "a statement expresses or implies a provably false assertion of fact." *Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418, 427 (2013) (internal quotations omitted).  "Not all statements that appear to be opinions . . .  are immunized," and "'a false statement of fact, whether expressly stated or implied from an expression of opinion, is actionable.'" *Id.* at 426-27 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)).  Indeed, "'expressions of "opinion" may often imply an assertion of objective fact.'" *Id.* at 426 (quoting *Milkovich*, 497 U.S. at 18); *see also Milkovich*, 497 U.S. at 18 ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth.").

In evaluating whether a statement is sufficiently factual to form the basis of a defamation claim, courts "consider[] both the language of the statement and the context in which it is made." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012). "[W]hat constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a

whole." *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 644 (1976).[5]

Weinstein's statements about Ms. Judd's professionalism and past interactions with her "imply an assertion of objective fact." *Bently*, 218 Cal. App. 4th at 426. That is especially true for Weinstein's false claim to Mr. Jackson and Ms. Walsh (which Weinstein does not address in his motion) that Miramax had a "bad experience" with Ms. Judd. That is a provably false assertion given that Weinstein had *no* professional interaction with Ms. Judd at the time and her two-day experience working on a Miramax film was uniformly positive. Dkt. 1-1 ¶¶ 21, 31. In *Bently*, a former tenant posted an online review that described a property owner as "a sociopathic narcissist—[who] celebrates making the lives of tenants hell," and made other complaints about evictions, rent charges, and noise, among other things. The court noted that while the former tenant "used some hyperbole and name calling," he "also included purported *facts* about [plaintiff's] building" and claimed he knew those facts from his "own first-hand experience" with plaintiff. *Id.* at 428. "Such assurances suggest facts are being communicated, not opinions." *Id.*

The context of Weinstein's statements further indicates that they were, and were intended to be, factual. In evaluating the context of a statement, courts examine "[the] full content of the communication, and the knowledge and understanding of the audience [targeted by the publication]." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (1991). Here, Weinstein told Ms. Walsh and Mr. Jackson about his supposed "bad experience" with Ms. Judd in response to their expressed enthusiasm for casting her in the *Lord of the Rings* films, adding that she was a "nightmare to work with" and should be avoided "at all costs." This was not idle chit-chat or another setting where Weinstein's damaging statements could be discounted. *Cf. Summit Bank*, 206 Cal. App. 4th at 696-98 (fact that statements were published in "Rants and Raves" section of Craigslist relevant context to

---

[5] In a transparent effort to smear Ms. Judd, Weinstein again improperly introduces statements about her that are outside the pleadings. Mot. at 15 n.10. Such statements cannot be considered on a motion to dismiss. *Arpin*, 261 F.3d at 925.

Gibson, Dunn &
Crutcher LLP

render them nonactionable opinion); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 811 (2002) (statements on an "irreveren[t] . . . morning radio program" that plaintiff was a "loser," "chicken butt" and "big skank" were not actionable, in context). To the contrary, "[t]he tone and content [was] serious, and a typical [listener] would take the [statements] seriously." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 705 (2007) (holding statements made in investment research reports sufficiently factual for defamation claim).

Weinstein made these statements ***in confidence*** during a serious business discussion regarding whom to cast in a major role in an "eagerly anticipated and secretive" film project. Dkt. 1-1 ¶¶ 28, 30. As alleged in the complaint, the "negative facts expressed and implied about Ms. Judd . . . were particularly salient under the circumstances: An actor who was a 'nightmare to work with' would have been particularly problematic for a high-stakes, multi-part production like *The Lord of the Rings*, filming for months on location in New Zealand thousands of miles from the actor's home." *Id*. ¶ 32. Indeed, Mr. Jackson and Ms. Walsh's actions illustrate just how seriously they took Weinstein's statements—"as a direct result" of those statements "[Ms. Judd's] name[] was removed from . . . the casting list." *Id*. ¶ 38.

Weinstein relies on *Yelp Inc. v. Superior Court*, 17 Cal. App. 5th 1 (2017) as support for his claim that this language "is an opinion not capable of being proven," and therefore not defamatory. Mot. at 15. But that case does not support Weinstein's argument—if anything, it supports Ms. Judd's position. In *Yelp*, a customer posted an online review describing her experience as "an absolute nightmare," and complained about the cost of the accountant's services and the quality of his work. 17 Cal. App. 5th at 16. The court held that the statements, while resembling opinions in part, *were* sufficiently factual to state a claim for defamation: "While it is true that pure expressions of opinion are not actionable, that does not mean that statements of opinion enjoy blanket protection." *Id*. Even "pure opinion . . . provides crucial context that can be considered in evaluating the comments that follow." *Id*.

Here, Weinstein's statement was more precise regarding a key aspect of Ms. Judd's profession, which requires direct engagement with directors, other actors, and crew; he specified that she was a nightmare **to work with**.  Even if that statement were pure opinion (it was not), when considered together with his statements that Miramax had a "bad experience" with Ms. Judd and that she should be "avoided" at all costs, the takeaway is an implied "assertion of fact" that "can constitute actionable defamation." *Yelp*, 17 Cal. App. 5th at 16; *see McNamee v. Roman Catholic Diocese of Sacramento*, 2015 WL 1469210, at *10 (E.D. Cal. Mar. 30, 2015) (statements by plaintiff's colleagues that she was "divisive," and failed to be "professional" and "a team player" were "reasonably susceptible of a factual interpretation," and whether those assertions were true or false was "a triable issue of fact").[6]

The clearest demonstration that Weinstein's statements are facts capable of being proven (and not non-actionable opinions) is that he repeatedly has tried to disprove them. As alleged in the complaint, Weinstein (through his authorized representative) claimed about *The Lord of the Rings* that he had "no input into the casting whatsoever," adding that Ms. Judd "was cast in two other films by Mr. Weinstein."  Dkt. 1-1 ¶ 39.  His authorized representative further contended that "[a]round the time of *Rings*, Mr. Weinstein cast Ms. Judd in *Frida* and years later, in *Crossing Over*."  *Id.*  In fact, "Miramax had flown Ashley to New York for casting discussions and to meet the production team for *Good Will Hunting*," and "Ashley was the top choice for Miramax

---

[6] Weinstein's citation to a Texas state court decision is off-base.  Mot. at 15 (citing *Avila v. Larrea*, 394 S.W.3d 646, 659 (Ct. App. Tex. 2012)).  Whether or not the term "nightmare" is ambiguous on its own (*i.e.*, in describing a legal case as a "nightmare" for the litigant's family), in the context of this case, Weinstein used the term to convey that Ms. Judd's work style and professionalism were unacceptable—a provably false assertion.  In any event, if the parties are exchanging authorities applying non-California law to determine whether describing someone or something as a "nightmare" is a statement fact or opinion, Ms. Judd submits *Presley v. Graham*, 936 F. Supp. 2d 1316 (M.D. Ala. 2013).  In *Presley*, a statement that an employee was "a supervisor's nightmare" was sufficient to state a defamation claim because "[a] reasonable reader could have concluded that [the speaker] had access to information about the specifics of [the employee's] job performance and that he based his opinion on his knowledge of these objective facts."  *Id.* at 1325.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-05724-PSG

Gibson, Dunn &
Crutcher LLP

and Mr. Weinstein." *Id.* Weinstein has recognized exactly what the statements to him about Ms. Judd both expressed and implied. He thus has cited facts to show that Ms. Judd was ***not*** a nightmare to work with and that he and Miramax did ***not*** have a bad experience with her. Now that he has a lawyer speaking for him, Weinstein has (improperly) gone outside the complaint to offer flimsy evidence purportedly showing that Ms. Judd ***was*** "difficult to work with." Mot. at 15 n.10. Whatever litigation tack he wants to take, he has admitted that the statements at issue can be proven true or false.

### 3. Weinstein's Statements Are Not Privileged Under Civil Code Section 47(C)

Weinstein's final argument is that his statements are not actionable because they were privileged under the common-interest doctrine. Mot. at 15. That doctrine applies to a statement made between two "interested" parties, "concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, [and] ***made without malice***." Civ. Code § 47(c) (emphasis added). Weinstein's statements are not privileged because they were malicious. *See Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1368 (2003) (plaintiff may defeat a claim of privilege by showing that a defendant acted with malice).

Malice is "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person, and may also be established by showing that defendant lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights." *Caputo v. Prada USA Corp.*, 2014 WL 12567143, at *11 (C.D. Cal. Feb. 6, 2014) (citations omitted). Malice can be established by the circumstances surrounding the statement. *Arvizu v. Wal-Mart Stores, Inc.*, 2017 WL 747432, at *4 (N.D. Cal. Feb. 27, 2017).

In *Slaughter v. Friedman*, 32 Cal. 3d 149 (1982), for example, allegations that the parties had "previous quarrels," "rivalries," and "ill feeling" such that statements "were made as part of a plan . . . to discredit and impugn the reputation and integrity of

Plaintiff" were sufficient to plead malice and withstand a demurrer.  *Id*. at 156-57.[7]
Weinstein's statements, which he made after Ms. Judd refused his sexual propositioning,
suffices to plead malice at this stage of the proceedings.

Weinstein alternately contends that, because he tried to cast Ms. Judd in later
films, he could not have acted with malice.  Mot. at 16.  To the contrary—Weinstein's
attempts to cast Ms. Judd in later films demonstrates that he "lacked reasonable grounds
to believe the statement[s] true" when he said she was a "nightmare" to work with and
"should be avoided at all costs."  *Caputo*, 2014 WL 12567143, at *11.  This, too,
establishes that the statements were made with malice and places them outside the
protection of section 47(c).  If anything, the invocation of this privilege by a famed
producer who had an ongoing relationship with Ms. Judd effectively admits her
allegation that he had ongoing power to make or break her ability to obtain acting jobs,
which he then exerted in a quintessential example of retaliatory sexual harassment.

## D.   Ms. Judd Has Timely Stated A Claim For Intentional Interference With Prospective Economic Advantage

Weinstein seeks dismissal of Ms. Judd's claim for intentional interference with
prospective economic advantage solely on the ground that it is time-barred.  Mot. at 16.
But this claim, like the others, is entitled to the protections of the discovery rule.  *Denver
Urban Homesteading, LLC*, 2015 WL 12819140, at *3.  As explained above, because
Ms. Judd did not learn the facts establishing four of the five elements of her intentional
interference claim until December 2017, the statute of limitations did not begin to run
until that date.  Thus, this claim (like her other claims) is timely.  *See supra* at 13-17.

---

[7] Similarly, in *Arvizu*, allegations that plaintiff "was subject to inappropriate race-based comments by management-level employees" and "expressed concern about the discriminatory conduct" supported her claim that that her employer's statement that she "engaged in 'gross misconduct'" "was motivated by malice."  2017 WL 747432 at *1, *4.

Gibson, Dunn & Crutcher LLP

23

**E.  Ms. Judd Has Stated A Claim For Unfair Competition**

Weinstein's last challenge is to argue that Ms. Judd's section 17200 ("UCL") claim should be dismissed because she has not alleged any actionable unlawful conduct and the claim is time barred.  Mot. at 18.  These arguments fail for several reasons.

As an initial matter, because section 17200 is written in the "disjunctive, the statute is violated where a defendant's act or practice is unlawful, unfair, fraudulent *or* in violation of section 17500." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999).  Thus, contrary to Weinstein's contentions, a plaintiff can state a claim under the statute by pleading facts to support any of section 17200's three prongs.  Ms. Judd adequately states claims for both unlawful and unfair conduct under the UCL.

A UCL claim for "unlawful" business practices "'borrows' violations of other laws and treats these violations . . . as unlawful practices independently actionable under" the UCL.  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992), *disapproved on other grounds by Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  As set forth above, Ms. Judd has adequately pleaded that Weinstein engaged in unlawful conduct, including common-law defamation and defamation under Civil Code section 46, civil harassment in violation of Civil Code section 51.9, and common-law intentional interference with prospective economic advantage.  Dkt. 1-1 ¶ 85.  These allegations are more than sufficient to state a claim for unlawful conduct under the UCL.

Weinstein failed to respond to Ms. Judd's allegations regarding "unfair" business practices and has therefore conceded their sufficiency through silence.  *See Radfer Trust v. First UNUM Life Ins. Co. of Am.*, 2004 WL 2385000, at *2 (N.D. Cal. Oct. 25, 2004) (holding that, pursuant to Fed. R. Civ. P. 12(b)(2), defendant waived defense by filing motion to dismiss without asserting defense in question); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  In any event, Ms. Judd has independently stated a

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-05724-PSG

Gibson, Dunn & Crutcher LLP

claim for unfair business conduct because she has alleged that Weinstein's behavior "significantly . . . harm[ed] competition." *Cel-Tech*, 20 Cal. 4th at 187. For example, as a result of Weinstein's conduct and the role she lost in *The Lord of the Rings*, Ms. Judd was paid a lower rate than she should have been for work on subsequent films—a fact which directly and financially benefited Weinstein with respect to two films in which she appeared. Dkt. 1-1 ¶ 90.

Finally, Weinstein makes the blanket statement that "the 'discovery rule' does not apply to unfair competition actions," citing to the decades-old *Stutz Motor Corp. of America, Inc. v. Reebok International Ltd.*, 909 F. Supp. 1353, 1365 (C.D. Cal. 1995) and an equally outdated case relying on it, *Suh v. Yang*, 987 F. Supp. 783 (N.D. Cal. 1997). *See* Mot. at 17. But the California Supreme Court has since expressly rejected *Stutz* and its progeny as having "misstated [the] law." *Aryeh*, 55 Cal. 4th at 1194 ("[T]he UCL is governed by [California] law accrual rules to the same extent as any other statute."); *see also Cover v. Windsor Surry Co.*, 2015 WL 4396215, at *3 (N.D. Cal. July 17, 2015) ("Accordingly, I am bound by *Aryeh* . . . and I conclude that the discovery rule is available to toll the statute of limitations on Cover's UCL claim. This is consistent with other courts in the Ninth Circuit."); *Viera v. Bank of Am.*, 2015 WL 12752882, at *4 n.1 (C.D. Cal. Oct. 28, 2015) ("[T]he delayed discovery rule is applicable to Plaintiff's UCL claims.").

Therefore, Ms. Judd has stated claims for both unlawful and unfair conduct under section 17200.

## V.   CONCLUSION

Ms. Judd's claims are legally sufficient, and she is entitled to take discovery to prove up those claims on the merits. There is no basis to dismiss any of her claims, let alone to dismiss any of them with prejudice. Accordingly, Ms. Judd respectfully asks the Court to deny Weinstein's motion to dismiss.

1    Dated:  August 10, 2018                  GIBSON, DUNN & CRUTCHER LLP

2

3                                   By:  */s/ Theodore J. Boutrous Jr.*

4                                      Theodore J. Boutrous Jr.

5                          Attorneys for Plaintiff Ashley Judd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28