UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order GRANTING in part and DENYING in part Defendant's motion to dismiss

Before the Court is a motion to dismiss filed by Defendant Harvey Weinstein ("Defendant"). *See* Dkt. # 11-1 ("*Mot.*"). Plaintiff Ashley Judd ("Plaintiff") has opposed this motion, *see* Dkt. # 12 ("*Opp.*"), and Defendant replied, *see* Dkt. # 16 ("*Reply*"). The Court held a hearing on this matter on September 18, 2018. After considering the arguments made in the moving papers and at the hearing, the Court **GRANTS** Defendant's motion in part and **DENIES** it in part.

I.      Background

Defendant co-founded the film company Miramax, which produced or distributed many successful films including *Pulp Fiction*, *Shakespeare in Love*, *Chicago*, and the *Kill Bill* series. *See Complaint*, Dkt. # 1-1 ("*Compl.*"), ¶¶ 6, 9, 14. At all times relevant to this suit, Defendant enjoyed "nearly plenary control of Miramax." *Id.* ¶ 11. As a result of Miramax's success, Defendant gained "power and cachet" in the film industry. *See id.* ¶ 10. Plaintiff alleges that "[b]y the late 1990s, [Defendant] was one of the most powerful and influential producers in the film business." *Id.*

Plaintiff is a prominent actor. In around late 1996 or early 1997, when she was "in her twenties and still a relative newcomer to Hollywood," Defendant invited her to a breakfast meeting at the Peninsula Hotel in Beverly Hills, ostensibly to discuss potential film roles. *Id.* ¶ 24. When she arrived, she was directed to Defendant's private hotel room. *Id.* Assuming the meeting was to occur there, she went to the room. *Id.* When Plaintiff arrived at the hotel room, she alleges that Defendant "appeared in a bathrobe, and, instead of discussing film roles, asked if he could give her a massage." *Id.* ¶ 25. Plaintiff refused. *Id.* She alleges that Defendant then "asked her to help him pick out clothes and to watch him shower." *Id.* Again, she refused. *Id.* Plaintiff alleges that she believed that Defendant intended to physically assault

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

her. *Id.* "[D]esperate to escape without angering a man who had the ability to end her budding career," Plaintiff engaged in what she calls a "mock bargain" with Defendant, "suggesting that she would consider letting him touch her only if she won an Academy Award in one of his films." *Id.* Defendant allegedly responded: "[W]hen you get nominated," but Plaintiff held firm, saying "No, when I win." *Id.* She then fled the scene. *Id.* Plaintiff alleges that Defendant continued to "lord that traumatic moment" over her, telling her at several public Hollywood events "something to the effect that he 'remembered their agreement.'" *Id.* ¶ 27.

About a year after the hotel room encounter, Plaintiff was involved in serious discussions to play a major role in the *Lord of the Rings* trilogy of films, which were to be directed by Peter Jackson. *Id.* ¶ 28. At this point, Miramax held the rights to the *Lord of the Rings* films. *Id.* ¶ 30. Jackson and his partner Fran Walsh invited Plaintiff to a private meeting where they showed her "essentially, their entire vision for how the film would be executed." *Id.* ¶ 28. Jackson and Walsh also asked her which of two potential roles she most identified with and would prefer to play. *Id.* Plaintiff alleges that the fact that they gave her "this rare creative insight into such an eagerly anticipated and secretive project" demonstrates that she had reached an advanced stage of the casting process. *Id.* She alleges that Jackson and Walsh "liked [her] very much" and intended to cast her in the *Lord of The Rings* films, which began shooting in October 1999. *Id.* ¶ 28. But Plaintiff did not end up being cast in the films. She alleges that for years, she did not know the reason why. *Id.* ¶ 35.

In October 2017, the *New York Times* and *The New Yorker* magazine published the accounts of a number of women, including Plaintiff, who accused Defendant of sexual harassment and assault in incidents stretching back decades.[1] These stories sparked an international conversation about Defendant's alleged pattern of sexual harassment and assault. Other women, including other actors, came forward with similar accusations. *See Compl.* ¶¶ 15–23.

As part of this conversation, Jackson—the director of the *Lord of the Rings* films—gave an interview to a New Zealand media outlet in December 2017 in which he revealed that "Miramax" had told him and Walsh in confidence during the time that they were casting the films that Plaintiff and Mia Sorvino—another actor who was being considered for a part in the

---

[1] *See* Jodi Kantor & Megan Twohey, *Harvey Weinstein Paid Off Sexual Harassment Accusers for Decades*, N.Y. Times (Oct. 5, 2017), https://www.nytimes.com/2017/10/05/us/harvey-weinstein-harassment-allegations; Ronan Farrow, *From Aggressive Overtures to Sexual Assault: Harvey Weinstein's Accusers Tell Their Stories*, The New Yorker (Oct. 10, 2017), https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assault-harvey-weinsteins-accusers-tell-their-stories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

series—were "a nightmare to work with and [that Jackson and Walsh] should avoid them at all costs." *Id.* ¶ 30. In another interview, Jackson said that "Miramax" had claimed to have had "bad experiences" with both actors in the past. *Id.*

Plaintiff alleges that these statements, which Jackson attributed to "Miramax," were made by Defendant. *Id.* Plaintiff alleges that Defendant knew the statements were false but made them in retaliation for her earlier rejection of his sexual advances, intending to hinder her chances of being cast in the *Lord of the Rings* films. *Id.* ¶ 31. In support of her argument that the statements were knowingly false, Plaintiff alleges that, at the time, she had worked on only one Miramax film, *Smoke*, and had spent only two days on set in a limited role—an experience she alleges was "uniformly positive." *Id.* ¶ 31.

Plaintiff alleges that she would have been cast in the *Lord of the Rings* films had it not been for Defendant's false statements. *Id.* ¶ 31. In support, she cites a further statement from Jackson where he explained: "[a]t the time, we had no reason to question what [Miramax was] telling us—but in hindsight, I realise that this was very likely the Miramax smear campaign in full swing. I now suspect we were fed false information about both of these talented women [i.e. Plaintiff and Sorvino], and as a direct result their names were removed from the casting list." *Id.* ¶ 38. The *Lord of the Rings* films went on to earn more than $2.5 billion in ticket sales and won seventeen Academy Awards. *Id.* ¶ 36. They were followed by *The Hobbit* trilogy, which were also directed by Jackson and grossed nearly $1 billion worldwide. *Id.* Plaintiff alleges that as a result of Defendant's alleged false statements, she was not considered for either series. *Id.*

On April 30, 2018, Plaintiff brought this suit in California Superior Court, asserting four causes of action:

First Cause of Action: Defamation at common law and pursuant to Cal. Civ. Code § 46. *Id.* ¶¶ 48–60.

Second Cause of Action: Sexual harassment in professional relationships, Cal. Civ. Code §§ 51.9, 52. *Id.* ¶¶ 61–72.

Third Cause of Action: Intentional interference with prospective economic advantage. *Id.* ¶¶ 73–82.

Fourth Cause of Action: Violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq. *Id.* ¶¶ 83–92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

On July 23, 2018, Defendant removed the case to this Court, invoking the Court's diversity jurisdiction. *See Notice of Removal*, Dkt. # 1. Defendant now moves to dismiss, arguing that Plaintiff's claims are barred by the applicable statutes of limitations and further that her allegations fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

III.    Discussion

Defendant argues that all of Plaintiff's claims are barred by the applicable statutes of limitations and makes additional arguments against three of Plaintiff's causes of action.[2] The Court will first address the statute of limitations argument, which is applicable to all claims, and will then turn to the claim-specific arguments.

---

[2] In his Reply, Defendant makes a further argument that the Court should not credit a number of Plaintiff's allegations because they are based only "on information and belief." *See Reply* 2:25–3:11. Generally, the Court does not consider arguments raised for the first time in reply. *See Hill v. Opus Corp.*, 464 B.R. 361, 371 n. 34 (C.D. Cal. 2011); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWx), 2006 WL 4749756, at *6 n. 52 (C.D. Cal. Sept. 25, 2006). Because Plaintiff has not had an opportunity to respond to this argument, the Court will not consider it here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

A. <u>Statute of Limitations</u>

Plaintiff's claims center around the false statements that Defendant allegedly made to Peter Jackson and Fran Walsh in 1998. But Plaintiff did not file this suit until 2018—twenty years after the statements are alleged to have been made. The statute of limitations periods for Plaintiff's claims range from one year to four years.[3] Defendant argues that the claims should be dismissed in their entirety because they were brought well after the applicable limitations periods expired. *See Mot.* 5:22–7:11; 11:2–13:15; 16:21–17:1; 17:3–18:5. Plaintiff does not dispute that her claims, at least on their face, were filed after the limitations periods have expired. Instead, she argues that her suit is timely under California's "discovery rule" because she had no way of knowing about Defendant's alleged statements to Jackson and Walsh until Jackson recounted them in the December 2017 interview. *See Opp.* 6:1–10:11.

Generally, "[a] plaintiff must bring a claim within the limitations period after the accrual of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). A cause of action normally accrues "at the time when the cause of action is complete with all of its elements." *Id.* (internal quotation marks omitted). In other words, the clock normally starts running on the limitations period when the events giving rise to each element of the cause of action have occurred.

The "discovery rule" serves as an exception to the general rule of accrual. *Id.* at 807. Under the discovery rule, a cause of action does not accrue "until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Id.* Plaintiffs are required to diligently investigate suspected injuries to determine their possible causes. *Id.* "If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Id.* at 808–09. In sum, to successfully invoke the discovery rule, "the

---

[3] *See* Cal. Civ. Proc. Code § 340 (one-year statute of limitations for defamation); *Augusta v. United Serv. Auto. Ass'n*, 13 Cal. App. 4th, 10 (1993) (two-year statute of limitations for intentional interference with prospective economic advantage); Cal. Bus. & Prof. Code § 17208 (four-year statute of limitations for violations of the UCL). Defendant argues that Plaintiff's second cause of action under California Civil Procedure Code § 51.9 is subject to the one-year statute of limitations that was in effect for Unruh Act claims at the time. *See Mot.* 5:23–6:1 and n.5. Plaintiff argues that the § 51.9 claim is not properly viewed as an Unruh Act claim, but she does not dispute that the statute of limitations period for the claim is one year. *See Opp.* 10:22–11:15 and n.3. Accordingly, the Court will assume for purposes of this motion that the claim is subject to a one-year statute of limitations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Id.* at 809.

Whether a plaintiff could have conducted an investigation that would have "reasonably discovered facts supporting the action within the applicable statute of limitations" period is a fact-specific question. *See id.* at 810 (holding that whether the discovery rule applies is "normally a question of fact"); *accord Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1308 (9th Cir. 1992) ("Where the cause of action was belatedly discovered, the issue whether the plaintiff exercised reasonable diligence is a question of fact."); *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008) ("The question when a plaintiff actually discovered or reasonably should have discovered the facts for the purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion.").

Courts do not resolve factual issues like these on a motion to dismiss. Instead, they must accept the plaintiff's non-conclusory allegations as true and determine whether they give rise to a plausible inference that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Therefore, the question before the Court is whether Plaintiff's allegations, accepted as true, give rise to a plausible inference that she did not learn, and would not have been reasonably able to learn, about Defendant's statements within the applicable limitations periods. *See Fox*, 35 Cal. 4th at 408.

In her complaint, Plaintiff alleges that she did not actually learn of Defendant's alleged statements until Jackson recounted them in the December 2017 interview. *See Compl.* ¶ 38. She also alleges that she would not have been able to discover them earlier by conducting a reasonable investigation. Specifically, she alleges that she reasonably believed that asking Jackson and Walsh why she was removed from consideration for the *Lord of the Rings* cast would have "risked alienating them and negatively affect[ing] their willingness to consider her for future projects." *Id.* ¶ 35. She further alleges that even if she had asked them, Jackson and Walsh would not have disclosed Defendant's statements because they were made in confidence by a powerful producer and film distributor that they had an important business relationship with. *Id.*

Defendant argues that because Plaintiff believed Jackson and Walsh "liked [her] very much and intended to cast her," *see id.* ¶ 28, she should have been on notice of potential wrongdoing when she learned that she had not been cast in the *Lord of the Rings* films. *See Mot.* 11:25–12:2. He contends that "[a]s a professional actor, Plaintiff and/or her agent certainly had the wherewithal to ask about the reasons for the casting decision," and there "was nothing particularly difficult that would have prevented [her] from discover[ing] or suspect[ing] that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

something had gone awry, especially as Plaintiff contends she was a shoo-in for the part." *Id.* 12:8–15. This is especially true, Defendant argues, because the hotel room encounter and the casting decision both occurred between 1996 and 1998—in "close proximity to each other," as he puts it—and therefore "should have raised Plaintiff's suspicion that they were somehow connected." *Id.* 12:26–13:6. Defendant contends that because Plaintiff did not take action to determine why she was not cast in the *Lord of the Rings*, she cannot show that she would have been unable to learn about the statements earlier by exercising reasonable diligence. *See id.* 13:1–6.

However, at the motion to dismiss stage, Plaintiff's allegations need only raise a plausible inference that she would have been unable to learn of Defendant's alleged statements during the limitations period. Plaintiff has alleged that Jackson and Walsh would not have revealed the contents of their confidential conversation with Defendant had she asked them why she had not been cast. The Court find this allegation plausible. Individuals often do not reveal the content of their confidential conversations, especially when the conversation is with a powerful figure who carries influence over them and includes derogatory information about the person inquiring about it. At this point, no evidence has been presented about whether it is common in the industry for actors to inquire into why they were not cast, and further, no evidence has been presented as to whether Jackson and Walsh would have informed Plaintiff about Defendant's statements had she asked them why she was not given a role in the *Lord of the Rings* films. Taking Plaintiff's allegations as true—as the Court must at this stage—the Court concludes that she has raised a plausible inference that she would not have been able to learn about Defendant's statements during the limitations period, even if she had conducted a diligent investigation.

Defendant makes additional arguments for why the discovery rule should not apply to two of Plaintiff's claims. First, he argues that it should not apply to Plaintiff's sexual harassment claim under California Civil Code § 51.9 because Plaintiff knew that she had been sexually harassed at the time of the hotel encounter in 1996 or 1997. *See Mot.* 5:22–7:11. But Defendant appears to be proceeding from the faulty premise that Plaintiff is seeking damages for injuries suffered during the hotel room encounter itself. Instead, Plaintiff's claim under § 51.9 targets Defendant's *retaliation* against her after she resisted his sexual advances. *See Opp.* 9:3–25. The commission of a retaliatory act is an element of Plaintiff's § 51.9 claim based on quid pro quo sexual harassment. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (holding that a plaintiff bringing a quid pro quo sexual harassment claim must show "tangible retaliatory conduct"). As explained above, Plaintiff's allegations raise a plausible inference that she would not have been able to learn of Defendants' retaliatory conduct—i.e. the alleged statements—until December 2017.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

Second, Defendant argues that Plaintiff cannot invoke the discovery rule with regard to her cause of action under the Unfair Competition Law (UCL) because "the 'discovery rule' does not apply to unfair competition actions." *See Mot.* 17:11–16 (citing *Stutz Motor Car of Am., Inc. v. Reebok Int'l Inc.*, 909 F. Supp. 1353, 1365 (C.D. Cal. 1995) and *Suh v. Yang*, 987 F. Supp. 783, 795 (N.D. Cal. 1997)). But Defendant relies on outdated precedent. In 2013, the California Supreme Court explicitly rejected *Stutz* and its progeny, holding that "the UCL is governed by common law accrual rules to the same extent as any other statute." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (2013). Subsequent decisions applying *Aryeh* have held that the discovery rule applies to UCL claims. *See Cover v. Windsor Surry Co.*, No. 14-cv-5262-WHO, 2015 WL 4396215, at *3 (N.D. Cal. July 15, 2015) ("Accordingly, I am bound by *Aryeh* . . . and I conclude that the discovery rule is available to toll the statute of limitations on [Plaintiff's] UCL claim."). The Court reaches the same conclusion here. Plaintiff can invoke the discovery rule with regard to her UCL claim.

For the foregoing reasons, the Court concludes that Plaintiffs claims are not barred by the applicable statutes of limitations.

    B.    <u>Defamation Claim</u>

Defendant argues that Plaintiff's defamation claim should be dismissed for three reasons. First, he argues that Plaintiff has not adequately alleged that Defendant was the person who made the allegedly false statements. Second, he argues that the statements are non-actionable statements of opinion because they are not capable of being proven false. Finally, he argues that even if the statements were defamatory, they were privileged under the common interest doctrine because Defendant, Jackson, and Walsh had a common interest in producing the *Lord of the Rings* films. The Court addresses each argument in turn.

        *i.*    *Whether the Statements Were Made By Defendant*

Defendant's first argument is easily dispensed with. It is true that Jackson attributed the alleged defamatory statements to "Miramax" in his media interviews. *See Compl.* ¶ 30. But Plaintiff explicitly alleges in her complaint that the statements attributed to Miramax were in fact made by Defendant. *See, e.g., id.* ¶ 30 ("Miramax (i.e. Weinstein) told [Jackson] and Ms. Walsh, in confidence, that Ms. Judd . . . [was] 'a nightmare to work with.'"); *id.* ¶ 31 ("These statements of purported fact, made by Weinstein, were false."). Plaintiff further alleges that Defendant had "nearly plenary control" of Miramax at the time. *Id.* ¶ 11.

These allegations, taken as true, are enough to raise a plausible inference that the statements were made by Defendant. A company like Miramax can speak only through the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

people who run it, and Defendant allegedly exercised "nearly plenary control" over Miramax at the time. Further, Plaintiff has alleged that Defendant had a motive to make the false statements because he was angry that she had rejected his sexual advances. The Court therefore concludes that these allegations are sufficient to raise a plausible inference that the statements Jackson attributed to Miramax were made by Defendant.

        ii.        *Whether the Statements are Non-Actionable Opinion*

"The sine qua non of recovery for defamation is the existence of falsehood." *ZL Techs, Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (cleaned up).[4] To establish a defamation claim, the plaintiff must show that the statement in question contained a provable falsehood. *Id.* Accordingly, courts distinguish between statements of fact and statements of opinion, the latter of which are generally "constitutionally protected." *Id.* However, statements of opinion do not enjoy "blanket protection." *Id.* "Where an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation." *Id.* The key question is "whether a reasonable fact finder could conclude the . . . statement declares or implies a provably false assertion of fact." *Id.; see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990) ("If a speaker says, 'In my opinion John Jones is a liar,' he implies knowledge of facts which lead to the conclusion that Jones told an untruth.").

Whether a purported statement of opinion is susceptible of a defamatory interpretation is a question of law for the Court. *ZL Techs.*, 13 Cal. App. 5th at 624. In making this determination, the Court looks to the totality of the circumstances, putting itself in the place of an average listener and determining "the natural and probable effect of the statement." *Id.* Both the language of the statement and the context in which it was made are relevant to this inquiry. *Id.*

Plaintiff's defamation claim is based on two statements that Defendant allegedly made to Jackson and Walsh: (1) that Plaintiff was "a nightmare to work with and [they] should avoid [her] at all costs," and (2) that he had "bad experiences" with her in the past. *See Compl.* ¶ 30. Defendant argues that these statements are non-actionable statements of opinion. *See Mot.* 14:19–15:14. But the Court disagrees.

---

[4] The "cleaned up" parenthetical indicates that superfluous material like brackets, ellipses, quotation marks, internal citations, and footnote references has been removed from a quotation and its removal does not matter for understanding the quotation or evaluating its weight. *See* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143, 147 (2018); *see also, e.g.*, *Lopez v. NAC Mktg. Co., LLC*, 707 F. App'x 492, 493 (9th Cir. 2017) (using the cleaned up parenthetical).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

Defendant's alleged statements imply at least two things: that Defendant had previous experiences with Plaintiff and that Plaintiff did something during those experiences such that Defendant considered them "bad" and considered her "a nightmare to work with." Plaintiff argues that she can prove these statements false because Defendant had no previous professional interactions with her and her short two-day experience working on the Miramax film *Smoke* (where she alleges that she did not interact with Defendant) was uniformly positive. *See Opp.* 19:2–15. The Court agrees with Plaintiff.

If Defendant indeed had no previous professional interactions—i.e. no previous "experiences"—with Plaintiff, his statement that he had "bad experiences" with her would be a provable fabrication. And in the context of a casting discussion for a major motion picture, Defendant's statements that he previously had "bad experiences" with Plaintiff and that she was "a nightmare to work with," heard together, could lead a reasonable person in Jackson's position to interpret them to imply that Defendant knew that Plaintiff had engaged in undesirable conduct during the production of previous films. This is a fact that Plaintiff could prove false if she is able to show that Defendant had no such knowledge. Because Defendant's alleged statements implied facts that are capable of being proven false, Plaintiff has met her burden of pleading a provable falsehood. *See ZL Techs.*, 13 Cal. App. 5th at 624.

### iii. Privilege

Defendant argues that the alleged statements cannot support a defamation claim because they are privileged under California's "common interest doctrine." *See Mot.* 15:15–19.

Under the common interest doctrine, "a communication, without malice, to a person interested therein . . . by one who is also interested" cannot form the basis of a defamation claim. Cal. Civ. Code § 47(c). However, the privilege applies only to statements made "without malice." *Id.* A plaintiff can defeat a privilege claim at the motion to dismiss stage by plausibly alleging that the defendant acted with actual malice in making the statements at issue. *See Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007). A plaintiff can demonstrate actual malice by "showing that the [statement] was motivated by hatred or ill will towards the plaintiff *or* by showing that the defendant lacked reasonable ground for belief in the truth of the [statement] and therefore acted in reckless disregard of the plaintiff's rights." *Id.* (emphasis original); *see also McGrory v. Applied Signal Tech., Inc.*, 212 Cal. App. 4th 1510, 1538 (2013) ("[M]alice has been defined as a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." (internal quotation marks omitted)).

It is clear that Plaintiff's complaint sufficiently alleges actual malice. The crux of Plaintiff's defamation claim is that Defendant intentionally made false statements to Jackson and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

Walsh for the purpose of sabotaging her chances of being cast in the *Lord of the Rings* films. These allegations are enough to give rise to a plausible inference that Defendant "was motivated by hatred or ill will toward her." *See Taus*, 40 Cal. 4th at 721. The Court therefore concludes that Plaintiff's allegations are sufficient to give rise to an inference of actual malice such that the common interest privilege cannot bar her claims at the motion to dismiss stage.

For the foregoing reasons, the Court concludes that Plaintiff has adequately pleaded her defamation claim. Accordingly, Defendant's motion to dismiss the defamation claim is **DENIED**.

C. <u>Sexual Harassment Claim</u>

Plaintiff brings a claim under California Civil Code § 51.9, which prohibits sexual harassment by a defendant who is in a "business, service, or professional relationship" with the plaintiff. Cal. Civ. Code § 51.9(1)(1). Defendant argues that at the time of the hotel room encounter, Plaintiff and Defendant were not in a business, service, or professional relationship within the meaning of the statute. *See Mot.* 7:14–9:9; *Reply* 6:16–7:10.

The statute provides that a "business, service, or professional relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons:

(A) Physician, psychotherapist, or dentist.

(B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, accountant, banker, trust officer, financial planner loan officer, collection service, building contractor, or escrow loan officer.

(C) Executor, trustee, or administrator.

(D) Landlord or property manager.

(E) Teacher.

(F) A relationship that is substantially similar to any of the above."

Cal. Civ. Code § 51.9(a)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

    Plaintiff does not argue that her relationship with Defendant falls into one of the categories explicitly listed in the statute. Instead, she argues under § 51.9(a)(1)(F) that their relationship was "substantially similar" to the listed examples because they are "relationships in which one party has significantly more power than the other, and in many cases, where one party serves as the gatekeeper to the other party's financial success." *Opp.* 12:17–19. Plaintiff argues that she was in a "drastically unequal power relationship" with Defendant because he "was a gatekeeper to many desirable roles and film projects" and "was one of the most powerful and influential producers in the film business." *Id.* 13:1–6 (citing the allegations at ¶¶ 10, 24, 62 and 65 of the complaint). At the hearing on this matter, Plaintiff added a slightly different argument, suggesting that she could be covered by the statute even if her relationship with Defendant was *not* substantially similar to the listed examples because the statute provides that a covered "business, service, or professional relationship may exist between a plaintiff and a person, including, *but not limited to* . . . [relationships that are] substantially similar" to the enumerated relationships. *See* Cal. Civ. Code § 51.9(a)(1) (emphasis added).

    But while the Court acknowledges that this provision uses broad language, there are indications that the statute was not intended to sweep so broadly. The introductory section of the bill enacting § 51.9 states that "[t]he Legislature finds and declares that sexual harassment occurs not only in the workplace, but in relationships between providers of professional services and their clients." 1994 Cal. Legis. Serv. ch. 710, S.B. 612, § 1. While this section was not codified with the rest of the statute, it was part of the act passed by the Legislature and provides a strong indication that the statute targets sexual harassment committed by providers of professional services—not sexual harassment committed by anyone who could be said to be involved in any sort of business, service, or professional relationship. The California Supreme Court appears to have taken this view, writing that "the Legislature enacted [§ 51.9] to address 'relationships between providers of professional services and their clients.'" *Hughes*, 46 Cal. 4th at 1044 (quoting § 1 of the bill).

    Adding further support to the proposition that § 51.9 was intended to cover providers of professional services, many of the categories of individuals listed in the statute, like accountants, attorneys, and physicians, clearly fall into that category. *See* Cal. Civ. Code § 51.9(a)(1). Other categories of individuals listed in the statute, such as teachers, might not be considered providers of professional services as the phrase is used in common parlance. But their relationships with students, which often put them in positions of trust or confidence and involve ongoing interactions rather than one-off transactions, bear obvious similarities to the relationships that physicians have with their patients or those that attorneys have with their clients.

    Plaintiff's single meeting with Defendant at the Peninsula Hotel was "ostensibly to discuss potential roles in films." *Compl.* ¶ 30. In this encounter, Plaintiff was not seeking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

professional services from Defendant but rather employment as an actor. Plaintiff has acknowledged that § 51.9 has never before been applied to an employer's sexual harassment of a prospective employee, and the Court is not convinced that the statute was intended to cover such harassment.

Plaintiff argues that the statute was intended to cover harassment in "power relationships," *see Opp.* 12:22, but the statute does not use that term.[5] Instead, § 51.9 provides an extensive list of twenty covered relationships, with a catch-all provision for relationships that are "substantially similar" to those listed. The twenty examples primarily involve categories of individuals who could be described as providing professional services in at least some sense. And many of the examples listed in § 51.9 involve categories of individuals who frequently engage in ongoing, rather than one-off, interactions with the recipients of their services (for example, attorneys, physicians, and teachers). In contrast, an employer cannot be said to be providing professional services to a prospective employee—he is best described as seeking someone to provide professional services on his behalf. Further, typical relationships between potential employers and prospective employees are generally much more limited in duration than the categories of relationships listed in § 51.9. A prospective employee usually either gets the job after an interview or series of interviews (and then becomes covered under sexual harassment laws applicable to employment relationships), or does not get the job, in which case the relationship ends. The temporary nature of a prospective employment relationship is qualitatively different than the often-more-permanent relationships common with the categories of individuals explicitly listed in the statute.

Plaintiff argues that whether her relationship with Defendant was "substantially similar" to those listed in § 51.9 is a question of fact that cannot be decided on a motion to dismiss. *See Opp.* 14:17–15:3. In support, she cites to *Tenet Healthcare*, 169 Cal. App. 4th 1094. But *Tenet Healthcare* is distinguishable. That case involved the question of whether a patient's relationship with a "certified nurse assistant" was substantially similar to the relationships explicitly listed in the statute. *Id.* at 1106. The court noted that a "certified nurse assistant can have a service or professional relationship with a patient . . . depend[ing] on the facts," and that the plaintiff there had alleged that the certified nurse assistant in question "had responsibilities that were substantially similar to those provided by a physician"—i.e. he alleged that they were

---

[5]A single passage of the legislative history does describe the statute as addressing "power relationships," but it does so in the context of discussing landlord-tenant and teacher-student relationships. *See Bill Analysis*, Dkt. 13-2, Ex. 1 at 5, ¶ 2. Even if this passage is relevant to understanding the bill's meaning, it cannot override the actual text of the bill that describes its purpose as addressing sexual harassment in "relationships between providers of professional services and their clients." 1994 Cal. Legis. Serv. ch. 710, S.B. 612, § 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

substantially similar to one of the relationships explicitly listed in the statute. *Id.*; *see* Cal. Civ. Code § 51.9(a)(1)(A) (listing a relationship between an individual and a physician as a covered relationship). The court concluded that the plaintiff "had alleged sufficient facts" to show that the certified nurse assistant fell within the scope of § 51.9 and that his "exact duties and his relationship with women who were patients [could] be fully litigated in a summary judgment proceeding or trial." *Tenet Healthcare*, 169 Cal. App. 4th at 1106–07.

In contrast to *Tenet Healthcare*, Plaintiff has not alleged that Defendant had the same responsibilities as one of the categories of individuals listed in the statute. While the law is not settled on this point, the Court is skeptical that § 51.9 can ever properly be applied to a relationship between a potential employer and a prospective employee. But the Court does not to decide here whether such relationships are categorically outside the statute's reach because it finds that Plaintiff has not alleged sufficient facts to show that her relationship with Defendant was substantially similar to any of the twenty listed examples. Accordingly, the Court **GRANTS** Defendant's motion to dismiss the § 51.9 claim.

D.  Intentional Interference with Prospective Economic Advantage Claim

With regard to Plaintiff's claim for intentional interference with prospective economic advantage, Defendant argues only that the claim is barred by the statute of limitations. As explained above, the Court finds that Plaintiff has adequately pleaded that she was unable to discover the events giving rise to this claim until December 2017. Accordingly, Defendant's motion to Plaintiff's claim for intentional interference with prospective economic advantage is **DENIED**.

E.  UCL Claim

The UCL prohibits individuals from engaging in "unlawful, unfair or fraudulent business act[s] or practice[s]." *See* Cal. Bus. & Prof. Code § 17200. The statute is written in the disjunctive and therefore is violated whenever an individual's business act or practice is unlawful, unfair, *or* fraudulent. *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999).

Defendant argues that Plaintiff cannot state a UCL claim because she has not alleged that Defendant engaged in unlawful conduct. But, as explained above, Plaintiff has adequately pleaded her defamation claim. The UCL "borrows violations of other laws and treats these violations, when committed pursuant to a business activity, as unlawful practices independently actionable under [the UCL]." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | September 19, 2018 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

Because the defamation was allegedly committed "pursuant to a business activity," Plaintiff has sufficiently pleaded a UCL claim based on an unlawful business act or practice. *See id.* Defendant's motion to dismiss the UCL claim is therefore **DENIED**.

IV.    Leave to Amend

At the hearing on this matter, Plaintiff requested an opportunity to amend her pleadings as to her sexual harassment claim under California Civil Code § 51.9. Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

As discussed above, the Court is skeptical that § 51.9 covers relationships between employers and prospective employees. But Plaintiff has asked for the opportunity to allege additional facts demonstrating that her relationship with Defendant was not the ordinary potential employer-prospective employee relationship. At this stage, the Court cannot conclude that amendment would be futile.

Accordingly, the Court **GRANTS** Plaintiff leave to amend. Plaintiff must file an amended complaint no later than **October 19, 2018**. Failure to do so will result in the § 51.9 claim being dismissed with prejudice.

V.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. The Court **DISMISSES** Plaintiff's second cause of action for sexual harassment in violation of California Civil Code § 51.9. Plaintiff may proceed on her claims for defamation, intentional interference with prospective economic advantage, and violation of the UCL.

If Plaintiff wishes to amend her § 51.9 claim she must file an amended complaint no later than **October 19, 2018**. Failure to do so will result in her § 51.9 claim being dismissed with prejudice.

**IT IS SO ORDERED**.