UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**    Order GRANTING Defendant's motion to dismiss

Before the Court is Defendant Harvey Weinstein's ("Defendant") motion to dismiss. *See* Dkt. # 30 ("*Mot.*"). Plaintiff Ashley Judd ("Plaintiff") has opposed this motion, *see* Dkt. # 39 ("*Opp.*"), and Defendant replied, *see* Dkt. # 46 ("*Reply*"). The California Women's Law Center has filed an amicus curiae brief in support of Plaintiff. *See* Dkt. # 42 ("*CWLC Br.*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving papers, the Court **GRANTS** Defendant's motion to dismiss.

I.    Background

    A.    Factual History

As the Court extensively recounted the allegations underlying this case in its previous order, it repeats only those necessary for deciding the current motion. *See September 19, 2018 Order*, Dkt. # 19 ("*Sept. 19 Order*").

Defendant is a well-known Hollywood producer who co-founded the film company Miramax. *See First Amended Complaint*, Dkt. # 26 ("*FAC*"), ¶¶ 9–12. Plaintiff is a prominent actor. In around late 1996 or early 1997, when she was "in her twenties and still a relative newcomer to Hollywood," Defendant invited her to a breakfast meeting at the Peninsula Hotel in Beverly Hills. *Id.* ¶ 24. The meeting was ostensibly to discuss potential film roles and to "build her professional profile," given that Defendant "had connections with successful film-makers and others involved in the casting of movies." *Id.*

Plaintiff alleges that such "general" meetings are common in Hollywood and are a form of business development, allowing the development and expansion of "professional relationships

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

between actors and studio executives, producers, or casting directors over the long term." *Id.* ¶ 25. These meetings, which "involve less-established talent who have a toehold in the industry but are not so firmly established that work presumptively finds them," are "inherently evaluative," with the studio executive, producer or casting director considering whether the actor is "qualified." *Id.* They may lead to film roles down the road or may provide "opportunities for mentorship between established influencers who control access to opportunities and up-and-coming talent who seek guidance and access to those opportunities." *Id.*

When Plaintiff arrived for her meeting with Defendant, she was directed to his hotel room. *Id.* ¶ 26. Assuming the meeting was to occur there, she went to the room. *Id.* When Plaintiff arrived at the hotel room, she alleges that Defendant "appeared in a bathrobe, and, instead of discussing film roles, asked if he could give her a massage." *Id.* ¶ 27. Plaintiff refused. *Id.* She alleges that Defendant then "asked her to help him pick out clothes and to watch him shower." *Id.* Again, she refused. *Id.* Plaintiff alleges that she believed that Defendant intended to physically assault her. *Id.* "[D]esperate to escape without angering a man who had the ability to end her budding career," Plaintiff engaged in what she calls a "mock bargain" with Defendant, "suggesting that she would consider letting him touch her only if she won an Academy Award in one of his films." *Id.* Defendant allegedly responded: "[W]hen you get nominated," but Plaintiff held firm, saying "No, when I win." *Id.* She then fled the scene. *Id.* Plaintiff alleges that Defendant continued to "lord that traumatic moment" over her, telling her at several public Hollywood events that he "still remembered their 'little deal.'" *Id.* ¶ 29.

About a year after the hotel room encounter, Plaintiff was involved in serious discussions to play a major role in the *Lord of the Rings* trilogy of films, which were to be directed by Peter Jackson. *Id.* ¶ 30. However, Plaintiff did not end up being cast in the films, and she alleges that for years she did not know the reason why. *See id.* ¶ 37. The truth came to light in 2017 when Jackson revealed in a public interview that Defendant had told him during the casting process that Plaintiff was "a nightmare to work with and [that he] should avoid [her] at all costs." *Id.* ¶ 32. In a later public statement, Jackson further revealed that Defendant had told Jackson that he had had "bad experiences" with Plaintiff in the past. *Id.* Plaintiff alleges Defendant's statements to Jackson were false and that absent them, she would have been cast in the *Lord of the Rings* films. *See id.* ¶ 34.

    B.    <u>Procedural History</u>

Plaintiff filed this case in Los Angeles Superior Court, bringing claims against Defendant for (1) defamation; (2) sexual harassment in professional relationships, Cal. Civ. Code § 51.9;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

(3) intentional interference with prospective economic advantage; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. *See Complaint*, Dkt. # 1-1. Defendant removed the case to this Court on the basis of diversity of citizenship and then moved to dismiss the complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Sept. 19 Order* at 4.

The Court granted the motion to dismiss in part and denied it in part. *See generally id.* It found that Plaintiff had adequately stated a claim for defamation, intentional interference with prospective economic advantage, and violation of the UCL. *See id.* at 8–11, 14–15. But the Court granted Defendant's motion to dismiss the sexual harassment claim under California Civil Code § 51.9, finding that Plaintiff had not adequately alleged that her relationship with Defendant was covered by the statute. *See id.* at 11–14. The Court granted leave to amend to give Plaintiff an opportunity to add additional allegations sufficient to make this showing. *See id.* at 15.

Plaintiff filed her First Amended Complaint ("FAC"), which includes further details about the nature of her relationship with Defendant. *See generally FAC*. Defendant now moves to dismiss only the sexual harassment claim, arguing that the allegations in the FAC are still insufficient to state a claim. *See generally Mot.*

II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

III. Discussion

As explained above, Defendant's motion challenges only Plaintiff's claim for sexual harassment under § 51.9 of the California Civil Code.[1] However, this statute was recently amended, and Plaintiff argues that the amendment should apply retroactively. *See Mot.* 15:7–16:19. Accordingly, before delving into the merits of Defendant's arguments, the Court must determine which version of the statute applies.

    A. Retroactivity of the 2018 Amendment to § 51.9

        *i.* *The 2018 Amendment*

In its order addressing Defendant's motion to dismiss the initial complaint, the Court interpreted the version of § 51.9 that was in effect from 2000–2018. *See Sept. 19 Order* at 11–14. That version provided, in relevant part:

> (a) A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following elements:
>
> > (1) There is a business, service, or professional relationship between the plaintiff and defendant. Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons:
> >
> > > (A) Physician, psychotherapist, or dentist . . . .
> > >
> > > (B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, accountant, banker, trust officer, financial planner loan officer, collection service, building contractor, or escrow loan officer.
> > >
> > > (C) Executor, trustee, or administrator.

---

[1] The Court makes clear that it is *not* determining whether Plaintiff was sexually harassed in the colloquial sense of the term. The only question presented by the current motion is whether the harassment that Plaintiff allegedly suffered falls within the scope of the California statute that she has sued under.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

      (D) Landlord or property manager.

      (E) Teacher.

      (F) A relationship that is substantially similar to any of the above.

Cal. Civ. Code § 51.9 (2000–2018 version) (the Court has omitted the other elements for purposes of this discussion).

      However, on September 30, 2018, after the Court issued its previous order, the California Legislature enacted an amendment to § 51.9, which went into effect on January 1, 2019. *See* 2018 Cal. Legis. Serv. Ch. 951. Relevant to this motion, the amendment added five additional examples of individuals with whom a relationship covered by the statute might exist: investors, elected officials, lobbyists, and—most relevant here—directors and producers.[2] *See id.* Plaintiff

---

[2] The relevant part of the statute now reads:

(a) A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following elements:

(1) There is a business, service, or professional relationship between the plaintiff and defendant **or the defendant holds himself or herself out as being able to help the plaintiff establish a business, service, or professional relationship with the defendant or a third party**. Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons:

    (A) Physician, psychotherapist, or dentist . . . .

    (B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, **investor,** accountant, banker, trust officer, financial planner loan officer, collection service, building contractor, or escrow loan officer.

    (C) Executor, trustee, or administrator.

    (D) Landlord or property manager.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

argues that this amendment, which explicitly provides that relationships with producers like Defendant may be covered by § 51.9, should be applied retroactively to her claims. *See Mot.* 15:7–16:19.

   *ii.*   *Legal Standard*

  The California Civil Code explicitly provides that "[n]o part of [the Code] is retroactive, unless expressly so declared." *See* Cal. Civ. Code § 3. Accordingly, California courts apply statutes retroactively only when there is either "express language or clear and unavoidable implication from the California Legislature." *Myers v. Philip Morris Cos.*, 28 Cal. 4th 828, 840 (2002). However, both California courts and the Ninth Circuit have recognized that legislation that merely clarifies, and does not modify, existing law "is not subject to any presumption against retroactivity and is applied to all cases pending as of the date of its enactment." *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000); *see also W. Sec. Bank v. Superior Court*, 14 Cal. 4th 232, 243 (1997) ("[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment.").

  Plaintiff does not argue that the Legislature explicitly or implicitly provided that the amendment should apply retroactively. Instead, she argues that the amendment to § 51.9 that took effect on January 1, 2019 and explicitly provides that relationships with producers can be covered by the statute, merely clarified the existing scope of the statute and therefore should be applied to her claims. *See Mot.* 15:7–16:19.

---

    (E) Teacher.

    **(F) Elected official.**

    **(G) Lobbyist.**

    **(H) Director or producer.**

    **(I)** A relationship that is substantially similar to any of the above.

Cal. Civ. Code § 51.9 (2019– version) (provisions added by the amendment in bold).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

      *iii.*    *Discussion*

      Plaintiff's argument that the amendment was a mere clarification centers around a sentence in the bill analysis that states that the "explicit mention" of producers and the other categories of individuals added by the amendment "is almost certainly declaratory of existing law."[3] *See Bill Analysis for Senate Bill 224*, Dkt. # 31-2 ("*Bill Analysis*").  But whatever value legislative history documents might have in statutory interpretation when they are created by the Legislature that enacted a statute, the views of the 2018 Legislature on the meaning of a statute enacted in 1999 are surely entitled to even less weight.  Statutory interpretation is the province of the judiciary, not the legislature.  As such, the California Supreme Court has recognized that "a legislative declaration of an existing statute's meaning is but a factor for a court to consider and is neither binding nor conclusive in construing the statute."  *McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 473 (2004).  Ultimately, the Court must make its own determination as to whether the amendment clarified or modified the statute.  *W. Sec. Bank*, 15 Cal. 4th at 244.

      Taking its own look at the amendment, the Court concludes that it modified, rather than clarified, the scope of § 51.9.  Producers, directors, elected officials, investors, and lobbyists differ in many ways from the categories of individuals that were listed in the prior version of the statute.  As the Court noted in its previous order, many of the categories of individuals listed in the prior version of the statute, such as accountants, attorneys, and physicians, clearly fall into the overarching category of providers of professional services.  *See Sept. 19 Order* at 12.  And while some of the enumerated categories, such as teachers, may not commonly be described as providers of professional services, the relationships of trust and confidence common to their positions bear obvious similarities to attorney-client or physician-patient relationships.  *See id.*  The Court believes that the relationships producers and directors commonly engage in are qualitatively different than those common to the categories of individuals listed in the prior version of § 51.9.  Indeed, the Court previously held as such in determining that Plaintiff's relationship with Defendant, a producer, was not covered by the statute.  *See Sept. 19 Order* at 14.  For these reasons, the Court concludes that amendment's explicit inclusion of producers expanded the reach of § 51.9 rather than merely clarifying it.  Consequently, the amendment cannot be applied to Plaintiff's claims.  *See Myers*, 28 Cal. 4th at 840.

---

[3] Defendant's unopposed request for judicial notice of the bill analysis is **GRANTED**.  *See* Dkt. # 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

Plaintiff argues that even if the Court finds that the amendment modified the statute, it should still view the statements in the bill analysis as evidence that the previous version of the statute covered producers like Defendant. *See Mot.* 16:7–19. But given the circumstances, the Court believes that the statement that the amendment merely codified existing law has little persuasive value. The amendment explicitly added producers, directors, and elected officials to the statute shortly after an outpouring of sexual harassment and assault allegations against individuals in these categories. The bill analysis explicitly references some of these allegations. *See Bill Analysis* at 5–6 n.1–4. The authors of the bill analysis had every reason to portray the previous version of § 51.9 as already encompassing these categories of individuals so that victims of harassment that took place prior to the amendment could get relief under the statute. But the fact that the Legislature found it necessary to amend the statute to explicitly include producers and others is evidence that it may have had some doubts as to whether these relationships were covered by existing law. While the 2018 Legislature almost certainly hoped that the prior version of § 51.9 covered harassment by producers, its statement in the bill analysis, which under the circumstances may have been colored by wishful thinking, is entitled to little weight in interpreting what the statute meant when it was enacted in 1999. Accordingly, the Court will not rely on it in interpreting the scope of the previous version of § 51.9.

B.   Whether Plaintiff's Relationship with Defendant Is Covered by § 51.9

Having decided that the 2018 amendment to § 51.9 does not apply, the Court turns to the question of whether Plaintiff's relationship with Defendant was covered by the prior version of the statute.

As discussed above, § 51.9 provides that a plaintiff bringing a claim under the statute must show that she was in a "business, service, or professional relationship" with the defendant. *See* Cal. Civ. Code § 51.9(a)(1) (2000–2018 version). It then elaborates that "[s]uch a relationship may exist between a plaintiff and a person, including but not limited to, any of the following persons," going on to list twenty specific categories of individuals as well as individuals with "a relationship substantially similar to any of the above." *See id.*

Plaintiff makes two arguments for why her relationship with Defendant was covered by the statute. First, she argues that she does not need to show that her relationship with Defendant was substantially similar to one of the listed relationships to state a claim. *See Opp.* 10:20–12:18. Second, she argues that her relationship with Defendant nonetheless *was* substantially similar to the listed relationships. *See Opp.* 13:1–15:4. The Court addresses each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

> *i.     The Meaning of "Business, Service, or Professional Relationship"*

Plaintiff first argues that the Court should read § 51.9 to provide that an individual can be in a "business, service, or professional relationship" covered by the statute even if that relationship is not substantially similar to one of the twenty listed examples. *See Mot.* 10:20–12:18. The Court agrees with this proposition in principle. By stating that a business, service, or professional relationship "may exist between a plaintiff and a person, *including, but not limited to,* any of the following persons: [going on to list the twenty examples as well as relationships that are "substantially similar" to them]," Cal. Civ. Code § 51.9(a)(1) (emphasis added), the statute contemplates that a plaintiff can be in a business, service, or professional relationship even if that relationship is not substantially similar to one of the listed examples. But this only begs the question of what the phrase "business, service, or professional relationship" means in the statute.

Plaintiff argues that the terms should be given their natural meaning, such that any relationship that could be described as "business, service, or professional" would be covered by § 51.9. *See Mot.* 11:19–23. But in context, the Court finds this reading implausible for reasons that are relevant to this case. In its order dismissing the § 51.9 claim in the original complaint, the Court found that Plaintiff's allegation that she met with Defendant "ostensibly to discuss potential roles in films" demonstrated that she "was not seeking professional services from Defendant but rather employment as an actor." *See Sept. 19 Order* at 12–13. Giving the terms "business, service, or professional" their common meanings would encompass relationships formed for the purposes of seeking employment—what the Court called prospective employee relationships—as such relationships could surely be described as "business" or "professional" in the colloquial sense of the terms. As such, the Court agrees with Plaintiff that the common meaning of the terms would encompass her relationship with Defendant. However, adopting this common-meaning construction would run counter to language in the preamble of the bill that enacted § 51.9 and to how the statute has been uniformly understood in the decades since its enactment.

As the Court noted in its previous order, the uncodified preamble[4] of the bill that enacted § 51.9 states: "the Legislature finds and declares that sexual harassment occurs not only in the workplace, but in relationships between providers of professional services and their clients." 1994 Cal. Legis. Serv. ch. 710, S.B. 612, § 1. This statement clearly contrasts harassment in

---

[4] While the preamble was not codified, it is not legislative history because it is part of the bill that was passed by the Legislature and signed by the Governor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

relationships covered by § 51.9 with harassment in employment relationships, strongly suggesting that the latter is not covered by the statute. Along these lines, the California Supreme Court has quoted this preamble in describing § 51.9 as "deal[ing] with sexual harassment in certain professional relationships *outside the workplace*." *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009) (emphasis original).

Plaintiff argues that an uncodified preamble "cannot be invoked to negate a statute's unambiguous terms." *See Mot.* 11:22–23 (citing *Yeager v. Blue Cross of Cal.*, 175 Cal. App. 4th 1098, 1103 (2009); *Chambers v. Miller*, 140 Cal. App. 4th 821, 825–26 (2006)). But "statements of purpose in a statute's preamble can be illuminating if a statute is ambiguous." *Yeager*, 175 Cal. App. 4th at 1103. The Court concludes that the terms "business" and "professional"—which are not defined in the statute—are ambiguous in context and that the preamble provides strong evidence that they do not extend the reach of the statute to relationships centering around employment. This reading comports with how the statute has been uniformly understood in the decades since its enactment. Plaintiff has not identified any case where § 51.9 was applied to harassment of an employee or prospective employee. And an interpretation of the statute that excludes relationships centering around employment makes sense in light of the twenty examples explicitly listed in the statute such as attorneys, physicians, teachers, and landlords. *See* Cal. Civ. Code § 51.9 (2000–2018 version). As the Court previously held, none of the categories of individuals listed in the statute commonly form relationships similar to the those that exist between employers and employees or prospective employees. *See Sept. 19 Order* at 12–13.

In short, the Court agrees with Plaintiff that § 51.9's reference to "business, service, or professional relationship[s] . . . including, but not limited to," the examples listed could in principle extend the statute to relationships that would not strictly be considered professional service relationships or "substantially similar" to one of the listed examples. *But see Hughes*, 46 Cal. 4th at 1044 ("[T]he Legislature enacted [§ 51.9] to address relationships between providers of professional services and their clients." (cleaned up)). But it concludes that whatever the limits of the statute, it does not apply to relationships that center around employment.

Having reached this conclusion, the Court turns to Plaintiff's alternative argument that she was nonetheless covered by § 51.9 because her relationship with Defendant was not one of prospective employment and was instead "substantially similar" to one of the listed examples.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

       ii.       *Whether Plaintiff's Relationship with Defendant Was Covered by the Statute*

     Section 51.9 lists twenty examples of individuals with whom relationships covered by the statute could exist, ranging from physicians and attorneys to teachers and collection services. *See* Cal. Civ. Code § 51.9(a)(1) (2000–2018 version). It then provides that "[a] relationship that is substantially similar to any of the above" is also covered. *Id.* § 51.9(a)(1)(F).

     As the Court previously recognized, many of the categories of individuals listed in the statute clearly fall into the category of providers of professional services. *Sept. 19 Order* at 12. Others, like teachers, "might not be considered providers of professional services as the phrase is used in common parlance. But their relationships with students, which often put them in positions of trust or confidence and involve ongoing interactions rather than one-off transactions, bear obvious similarities to the relationships that physicians have with their patients or those that attorneys have with their clients." *Id.* However, the Court acknowledges that other examples listed in the statute do not neatly fall into these categories. Collection services are listed in the statute but are not normally seen as providing professional services to those from whom they collect debts. *See* Cal. Civ. Code § 51.9(a)(1)(B) (2000–2018 version). And, as Plaintiff points out, while real estate appraisers are listed in the statute, they normally engage in one-off transactions rather than forming more permanent relationships. *See id.*

     Citing these differences, Plaintiff argues that "there has to be some other link between the enumerated relationships to make them similar to one another." *See Mot.* 13:10–13. But having made this statement, she fails to put forth a theory of what this link is. Perhaps this is not surprising. Attempting to divine a hidden thread that ties the twenty listed examples together may be an exercise in futility. While there are several factors common to many of the examples—such as the fact that many are service providers or the fact that the relationships they enter into often have a degree of permanence or put the parties in positions of trust or confidence—there may simply not be one single element that applies to each and every example. Some of the listed examples might just be products of specific incidents or hypotheticals on the minds of the drafters when the statute was first enacted, almost twenty-five years ago.

     Having failed to identify a link between the examples, Plaintiff takes a different tack, making further arguments for why her relationship was a "business" relationship, covered by § 51.9(a)(1). She contends that while "a chance social meeting—alone and without more—may not rise to the level of civil harassment," her relationship with Defendant is covered by the statute because "[Defendant] sought her out" for a meeting on the pretense that "they would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

'discuss potential roles in films' which could 'build her professional profile.'" *See Mot.* 13:25–14:2 (quoting *FAC* ¶ 24). She maintains that she "understood the meeting to be a 'business meeting'" and that although potential future roles could be discussed, it "was not a 'job interview' for work at [Defendant's] company or even for work on 'a particular role.'" *See id.* 14:7–11 (quoting *FAC* ¶¶ 24–25). She points to her appearance in the 1995 Miramax film *Smoke* in support of her contention that the meeting was a continuation of her previous business relationship with Defendant. *See Mot.* 14:2–5. And she makes one explicit attempt to tie her relationship to the examples listed in § 51.9 by alleging that such "general" meetings are "inherently evaluative, with the studio executive, producer or casting director controlling the work and considering—like a banker or a loan officer—whether the actor is 'qualified.'" *FAC* ¶ 25. But the Court finds the allegations insufficient to give rise to a plausible inference that the harassment she allegedly suffered at Defendant's hands falls within the scope of § 51.9, whether as a "business" relationship under § 51.9(a)(1) or as a relationship "substantially similar" to one of the listed examples under § 51.9(a)(1)(F).

At bottom, whether Plaintiff's meeting with Defendant was a job interview, or simply a "business development" meeting that she believed could lead to film roles down the road, *see FAC* ¶ 25, the Court cannot escape the conclusion that her relationship with Defendant fundamentally centered around employment or potential employment. As the Court has explained above, it does not believe that § 51.9 covers employment or potential employment relationships. For this reason, Plaintiff's attempt to describe the relationship as substantially similar to one with a banker and loan officer because her meeting with Defendant "was inherently evaluative" falls flat. The statute cannot reach all relationships where individuals engage in meetings that are "inherently evaluative," because job interviews are also inherently evaluative, and job interviews fall outside the scope of the statute. In sum, Plaintiff's relationship with Defendant was qualitatively different than any of the twenty examples listed in § 51.9, and, as best the Court can tell, qualitatively different than any context in which the statute has been previously applied. For this reason, the Court concludes that she cannot state a claim for a violation of § 51.9.

Plaintiff argues that whether her relationship with Defendant was substantially similar to the listed examples is a factual question to be decided at a later stage. *See Mot.* 14:23–15:4. In support, she cites to *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1106 (2009). But as the Court explained in its previous order, *Tenet Healthcare* is readily distinguishable. There, the plaintiff had alleged that a relationship with a certified nurse assistant was covered by the statute because the nurse assistant "had responsibilities that were substantially similar to those provided by a physician." *Id.* The court concluded that the plaintiff "had alleged sufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | January 9, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

facts" to show that the certified nurse assistant fell within the scope of § 51.9 and that his "exact duties and his relationship with women who were patients [could] be fully litigated in a summary judgment proceeding or trial." *Id.* at 1106–07. In contrast, Plaintiff has not alleged facts sufficient to give rise to a plausible inference that her relationship with Defendant was substantially similar to one of the twenty examples. *See Iqbal*, 556 U.S. at 678. As explained above, the mere fact that her meeting with Defendant was "inherently evaluative" is not enough.

For these reasons, the Court concludes that the allegations in the FAC fail to state a claim upon which relief under California Civil Code § 51.9 can be granted. Accordingly, it **GRANTS** Defendant's motion to dismiss.[5]

IV.  Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Having previously granted Plaintiff an opportunity to amend, the Court concludes that any further amendment would be futile. Accordingly, leave to amend is **DENIED**, and Plaintiff's claim under California Civil Code § 51.9 is **DISMISSED** with prejudice.

V.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim under California Civil Code § 51.9 with prejudice. Leave to amend is **DENIED**.

Plaintiff may proceed on her claims for defamation, intentional interference with prospective economic advantage, and violation of the UCL.

**IT IS SO ORDERED**.

---

[5] The Court does not reach Defendant's other arguments for dismissal.