UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING Plaintiff's motion for entry of final judgment on the Court's order dismissing her sexual harassment claim

Before the Court is Plaintiff Ashley Judd's ("Plaintiff") motion for the Court to enter final judgment on its previous order dismissing her sexual harassment claim with prejudice. *See* Dkt. # 54 ("*Mot.*"). Defendant Harvey Weinstein ("Defendant") has opposed this motion, *see* Dkt. # 57 ("*Opp.*") and Plaintiff replied, *see* Dkt. # 59 ("*Reply*"). The Court held a hearing on this matter on April 1, 2019. Having considered the moving papers and the arguments made at the hearing, the Court **GRANTS** Plaintiff's motion.

I.   Background

   A.   Factual Background

Defendant is a well-known Hollywood producer who co-founded the film company Miramax. *See First Amended Complaint*, Dkt. # 26 ("*FAC*"), ¶¶ 9–12. Plaintiff is a prominent actor. In around late 1996 or early 1997, when she was "in her twenties and still a relative newcomer to Hollywood," Defendant invited her to a breakfast meeting at the Peninsula Hotel in Beverly Hills. *Id.* ¶ 24. The meeting was ostensibly to discuss potential film roles and help build her professional profile. *Id.*

When Plaintiff arrived at the hotel, she was directed to Defendant's hotel room. *Id.* ¶ 26. She alleges that Defendant "appeared in a bathrobe, and, instead of discussing film roles, asked if he could give her a massage." *Id.* ¶ 27. Plaintiff refused. *Id.* She alleges that Defendant then "asked her to help him pick out clothes and to watch him shower." *Id.* Again, she refused. *Id.* "[D]esperate to escape without angering a man who had the ability to end her budding career,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

Plaintiff engaged in what she calls a "mock bargain" with Defendant, "suggesting that she would consider letting him touch her only if she won an Academy Award in one of his films." *Id.* She then fled the scene. *Id.* Plaintiff alleges that Defendant continued to "lord that traumatic moment" over her, telling her at several public Hollywood events that he "still remembered their 'little deal.'" *Id.* ¶ 29.

About a year after the hotel room encounter, Plaintiff was involved in serious discussions to play a major role in *The Lord of the Rings* trilogy of films, which were to be directed by Peter Jackson. *Id.* ¶ 30. However, Plaintiff did not end up being cast in the films, and she alleges that for years she did not know the reason why. *See id.* ¶ 37. The truth came to light in 2017 when Jackson revealed in a public interview that Defendant had told him during the casting process that Plaintiff was "a nightmare to work with and [that he] should avoid [her] at all costs." *Id.* ¶ 32. In a later public statement, Jackson further revealed that Defendant had told Jackson that he had had "bad experiences" with Plaintiff in the past. *Id.* Plaintiff alleges that Defendant's statements to Jackson were false and that absent them, she would have been cast in the *Lord of the Rings* films. *See id.* ¶ 34. The FAC suggests that her failure to be cast in the series cost her millions of dollars in potential income. *See id.* ¶ 9.

B.  Procedural History

On April 30, 2018, Plaintiff filed this case against Defendant in Los Angeles Superior Court, asserting causes of action for (1) defamation; (2) sexual harassment in professional relationships, Cal. Civ. Code § 51.9; (3) intentional interference with prospective economic advantage; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. *See Complaint*, Dkt. # 101. After the case was removed to this Court on the basis of diversity of citizenship, Defendant moved to dismiss. *See September 19, 2018 Order*, Dkt. # 19 ("*First MTD Order*"), at 4. The Court denied the motion as to the defamation, intentional interference with prospective economic advantage, and UCL claims, but granted the motion as to the sexual harassment claim under § 51.9. *See id.*

Whether § 51.9 applied to sexual harassment committed by a producer against an actor was an issue of first impression. The Court observed that the statute appeared to be primarily targeted at sexual harassment committed by providers of professional services, whereas the relationship between Plaintiff and Defendant appeared more similar to the relationship between an employer and a prospective employee. *See id.* at 11–13. It concluded that Plaintiff had failed to adequately allege that the relationship between her and Defendant was substantially similar to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

the examples listed in § 51.9 and dismissed the cause of action for failure to state a claim. *See id.* at 14.

The Court granted leave to amend, and Plaintiff filed an amended complaint containing additional allegations in support of her sexual harassment claim under § 51.9. *See FAC*. Defendant again moved to dismiss the claim, and the Court again granted the motion. *See January 9, 2019 Order*, Dkt. # 51 ("*Second MTD Order*"). The Court first rejected Plaintiff's argument that a recent amendment to § 51.9 that explicitly included harassment committed by producers applied retroactively to her claims, which were based on events that took place decades ago. *See id.* at 4–8. It then concluded once again that she could not state a claim under the previous version of § 51.9. *See id.* at 8–13.

While noting that the relationship between Plaintiff and Defendant could fall within the common meaning of the phrase "business, service, or professional relationship" as used in § 51.9, the Court found that context suggested that the phrase should not be given its plain meaning. *See id.* at 9. It found it especially persuasive that the California Legislature had described the statute as addressing harassment "in relationships between providers of professional services and their clients" and that it had been uniformly understood since its enactment as not extending to relationships centering around employment, even though such relationships could be considered business or professional relationships under the plain meaning of those terms. *Id.* at 9–10. The Court then turned to the question of whether Plaintiff's relationship with Defendant was "substantially similar" to the twenty examples of covered relationships listed in the statute. While noting that it was difficult to find a single thread that could tie all twenty examples together, the Court found it significant that many of the listed relationships clearly involved providers of professional services. *See id.* at 11. Taking all of these factors into account, the Court concluded that whatever the outer reach of § 51.9, it did not extend to harassment committed in "employment or potential employment relationships." *Id.* at 12. And it further concluded that because Plaintiff's relationship with Defendant centered around employment or potential employment, she could not state a claim under the statute. *See id.* Accordingly, the Court dismissed the § 51.9 claim with prejudice.

Plaintiff has now moved under Federal Rule of Civil Procedure 54(b) for an order entering final judgment on her sexual harassment claim so that she may immediately appeal the dismissal. *See generally Mot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

II. Legal Standard

The general rule in the federal courts is that parties must wait to appeal until *all* of the claims in a case have been resolved. One exception to this rule is supplied by Federal Rule of Civil Procedure 54(b), which provides that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." If a district court enters judgment on a claim under Rule 54(b), that claim may be immediately appealed even though other claims in the case remain pending.

The decision on whether to enter final judgment on a claim is a two-step process. First, the court must determine whether its decision on the claim is "final," in the sense that it is "an ultimate disposition" of that claim. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). If the decision is final, the court must then determine "whether there is any just reason for delay." *Id.* at 8; Fed. R. Civ. P. 54(b). In making this determination, this Court has previously looked at factors such as (1) the relationship between the adjudicated and unadjudicated claims, (2) the possibility that the need for review might or might not be mooted by future developments in the district court, (3) the possibility that the reviewing court might be obliged to consider the same issue twice, (4) the presence or absence of a claim that could result in a set-off against the judgment sought to be made final, and (5) other miscellaneous factors, such as delay, economic and solvency concerns, shortening the time of trial, and the frivolity of competing claims. *Ins. Co. of Penn. v. Cty. of San Bernardino*, No. EDCV 16-128 PSG (SSx), 2017 WL 5973284, at *3 (C.D. Cal. Apr. 25, 2017).

Rule 54(b) allows the district court to "act as a dispatcher," exercising its "sound judicial discretion," to determine the appropriate time at which each final decision in a multiple-claim case is ready for appeal. *Curtiss-Wright*, 446 U.S. at 8. The district court's decision is given "substantial deference" on appeal. *Id.* at 10; *Jewel v. NSA*, 810 F.3d 622, 628 (9th Cir. 2015).

III. Discussion

The parties do not dispute that the Court's order dismissing Plaintiff's sexual harassment claim with prejudice was a final decision. *See Curtiss-Wright*, 446 U.S. at 8. Accordingly, the Court analyzes only whether there is just reason for delaying appeal of the order.[1]

---

[1] Defendant inexplicably spends six pages of his opposition arguing that the Court's dismissal of the § 51.9 claim should not be certified for interlocutory appeal under 28 U.S.C. § 1292(b). *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

    A.    <u>Relationship Between the Claims</u>

    The Court dismissed the § 51.9 sexual harassment claim because it found that the 2019 amendment to the statute did not apply retroactively and that Plaintiff's relationship with Defendant did not fall within the reach of the previous version of the statute. *See Second MTD Order* at 8–13. These legal conclusions are completely distinct from any legal questions that will arise in adjudicating Plaintiff's remaining claims for defamation, intentional interference with prospective economic advantage, and violation of the UCL. Similarly, the factual allegations relevant to the Court's decision—which concern the nature of Plaintiff's relationship with Defendant at the time of the Peninsula Hotel meeting—are largely not relevant to the other three causes of action.

    That is not to say that none of the factual allegations underlying Plaintiff's sexual harassment claim overlap with her other claims. The injury she alleges with regard to her sexual harassment claim is the same injury that her other claims are based on: that Defendant retaliated against her by spreading false information that harmed her career opportunities, specifically her opportunity to be cast in *The Lord of the Rings* series. But this alone is not enough to foreclose entry of judgment under Rule 54(b). *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 881 (9th Cir. 2005) ("We do not mean to suggest that claims with overlapping facts are foreclosed from being separate for purposes of Rule 54(b). Certainly they are not."). Because the factual allegations about Plaintiff's relationship with Defendant are largely not relevant to her other causes of action, there is little risk that the Ninth Circuit "will have to revisit the same facts—spun only slightly differently—in a successive appeal." *Id.* at 882.

    The Court's legal conclusions about the retroactivity and scope of § 51.9 are completely distinct from Plaintiff's other claims, and the factual allegations underlying the Court's decision to dismiss the sexual harassment claim under § 51.9 are largely distinct as well. Accordingly, the Court finds that this factor weighs in favor of entering final judgment on the sexual harassment claim.

---

*Opp.* 7:1–12:19. Plaintiff has not asked for certification of an interlocutory appeal under that statute, which requires a more rigorous analysis than a request for entry of judgment under Rule 54(b), and therefore Defendant's § 1292(b) arguments are irrelevant to the motion currently before the Court. *See James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

B.  Possibility That the Need for Review Might Be Mooted

Plaintiff contends that "there is no risk that future developments at the district court level would render moot the Court's decision on the proper interpretation of [§ 51.9]." *See Mot.* 7:8–10. While this may have somewhat overstated things, the Court believes that there is at least a substantial likelihood that later developments will not moot its decision to dismiss the sexual harassment claim.

Though Plaintiff's claims for damages are all based on her failure to be cast in *The Lord of the Rings*, she explained at the hearing that she would only be entitled to statutory attorneys' fees if she prevails on her sexual harassment claim, so prevailing on her other claims may not entitle her to all of the relief she seeks. Conversely, if a jury finds against Plaintiff on her defamation, intentional interference with prospective economic advantage, and UCL claims, the extent to which issue preclusion would prevent her from prevailing on her sexual harassment claim is an unsettled question given the different elements of the different causes of action.

Further, the somewhat unique circumstances surrounding this case render it unlikely that the Court's order dismissing Plaintiff's sexual harassment claim will become moot any time soon. By separate order, the Court has stayed the proceedings in this case pending Defendant's trial on criminal charges in New York state court. This stay is likely to last for at least two months, and there is a possibility that it may last longer if the criminal trial is continued. At this point, no discovery has been conducted in this case and no trial date has been set. Accordingly, the Ninth Circuit may be able to rule on the viability of Plaintiff's sexual harassment claim before the other claims go to trial. This creates at least a possibility that all of the claims may be able to be tried together in the event the Ninth Circuit reverses this Court's decision.

Given the likelihood that later developments will not moot the appeal of the dismissal of the sexual harassment claim—or at least the likelihood that they will not do so anytime soon—the Court concludes that this factor weighs in favor of allowing an immediate appeal.

C.  The Need for Appellate Review of An Important Issue

In requesting an opportunity to immediately appeal the dismissal of her sexual harassment claim, Plaintiff puts significant emphasis on the fact that this Court's order was the first to decide that the 2019 amendment to § 51.9 does not apply retroactively and the fact that the Court had to confront novel and uncertain questions of law in reaching its conclusion that the statute does not extend to relationships like the one between Plaintiff and Defendant. *See Mot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5724 PSG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | Ashley Judd v. Harvey Weinstein | | |

8:20–10:8. The Court agrees with Plaintiff that this is a relevant consideration in deciding whether to enter judgment under Rule 54(b) and further agrees that its decision on two novel legal issues merits immediate review.

As the briefing on the motions to dismiss demonstrated, there have been very few decisions from any court addressing the types of relationships covered by § 51.9 and none that have addressed whether sexual harassment committed by producers is covered under the statute. The language of the statute is ambiguous, and as the Court discussed in its previous orders, the plain meaning of its text appears to sweep more broadly than other circumstances appear to indicate that it was intended to sweep. *See Second MTD Order* at 9–10. While the 2019 amendment to the statute makes clear that harassment by producers is covered going forward, it provides little guidance about what it means for a relationship to be "substantially similar" to the listed examples or whether relationships centering around employment are encompassed within the statute's reach. Further, the Court's decision that the 2019 amendment cannot be applied retroactively has implications for other individuals like Plaintiff who allege that they have discovered only recently that their career prospects were harmed because of sexual harassment. The Court believes that an appellate decision on these important issues could provide needed guidance to lower courts applying § 51.9. Accordingly, the Court finds that this factor weighs in favor of entering final judgment.

  D. Summary

Taking all of the circumstances into account, the Court concludes that there are no just reasons for delaying appeal of the dismissal of Plaintiff's sexual harassment claim under § 51.9. The claim presents novel legal questions that are entirely distinct from Plaintiff's other claims, and appellate review may provide important guidance to other courts grappling with similar issues. Accordingly, the Court **GRANTS** Plaintiff's motion for entry of judgment on her sexual harassment claim.

IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for entry of judgment on its order dismissing her sexual harassment claim under § 51.9. Plaintiff is directed to lodge a proposed entry of judgment consistent with this order no later than **April 10, 2019**.

  **IT IS SO ORDERED**.